1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

| | |
|---|---|
| JOSHUA D. LAMBERT,<br><br>                      Plaintiff,<br><br>    v.<br><br>ROBERT McKAY, *et al.*,<br><br>                      Defendants. | CASE NO. C19-1829-BJR-MAT<br><br>REPORT AND RECOMMENDATION |

13

## INTRODUCTION AND SUMMARY CONCLUSION

14

15

16

17

18

19

20

21

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Joshua Lambert, who is currently confined at the Washington State Penitentiary in Walla Walla, Washington, is proceeding with this action *pro se* and *in forma pauperis*. Plaintiff's claims arise out of a period of confinement at the Island County Correctional Facility (ICCF) in 2018. Though plaintiff asserts in his complaint twenty-four claims for relief against nine defendants, the Court considers here only those claims asserted against defendant Robert McKay, the attorney appointed to act as plaintiff's standby counsel during plaintiff's re-sentencing proceedings in Island County Superior Court.

22

23

Plaintiff alleges that defendant McKay conspired with ICCF staff to violate his constitutional rights to free speech and to be free from retaliation in relation to a May 30, 2018

REPORT AND RECOMMENDATION
PAGE - 1

phone call plaintiff made to defendant. (*See* Dkt. 6, ¶¶ 3.1, 3.2, 3.3, 4.1, 4.2, 5.1, 5.2.) Plaintiff also alleges that defendant McKay defamed him in relation to a May 24, 2018 phone call plaintiff made to defendant. (*See id.*, ¶ 24.1.) Defendant McKay has filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims asserted against him in this action. (Dkt. 14.) Plaintiff has filed a response in opposition to defendant's motion (Dkt. 19), and defendant has filed a reply brief in support of his motion to dismiss (Dkt. 22).[1]

The Court, having reviewed defendant McKay's motion to dismiss, and the balance of the record, concludes that defendant's motion should be granted, and that plaintiff's complaint and this action should be dismissed with prejudice as to the federal constitutional claims asserted against defendant McKay and without prejudice as to the single state law claim asserted against defendant McKay.

## BACKGROUND

On January 19, 2018, following remand of plaintiff's criminal case to the Island County Superior Court, defendant McKay was appointed as plaintiff's standby counsel. (Dkt. 45, Ex. 3.) On June 28, 2018, after proceedings in the superior court concluded, defendant McKay withdrew as standby counsel.[2] (*Id.*, Ex. 18.) The allegations in plaintiff's complaint suggest that plaintiff

---

[1] Plaintiff also filed a surreply seeking to strike various portions of defendant's reply brief. (Dkt. 30.) Defendant McKay has filed an objection to plaintiff's surreply, arguing that it does not comport with Local Civil Rule (LCR) 7(g). (Dkt. 32.) Defendant is correct that plaintiff's surreply was not filed within the time prescribed by the rule (five days), and it exceeds the page limitation (three pages) allowed for in the rules. However, leaving aside these defects, it appears that plaintiff's surreply constitutes a veiled attempt to offer additional argument in opposition to defendant's motion to dismiss which is not the purpose of a surreply, *see* LCR(g)(3), and, thus, the brief will not be considered.

[2] Defendant McKay requests in his motion to dismiss that the Court take judicial notice of documents on file in plaintiff's criminal case. (*See* Dkt. 14 at 2-3; Dkt. 45, Exs. 1-18.) Plaintiff moves to strike the documents on the grounds that they are irrelevant. (Dkt. 19 at 2.) Aside from the fact that two of the exhibits referenced herein (Dkt. 45, Exs. 3 and 18) provide some very basic background information concerning the relationship between plaintiff and defendant, the documents otherwise do not appear to have any direct relation to the matters at issue here. Accordingly, the Court declines to take judicial notice of the proffered documents save for the two documents referenced above which confirm that defendant McKay was acting as plaintiff's standby counsel at times relevant to this action.

REPORT AND RECOMMENDATION
PAGE - 2

had a contentious relationship with defendant McKay during his tenure as plaintiff's standby counsel.

On May 24, 2018, plaintiff, by his own admission, left several "vulgar and cussing" messages on defendant McKay's voicemail. (*Id.*, ¶ 3.6.) According to plaintiff, defendant McKay thereafter called the ICCF and spoke with Lt. Becker who, in turn, spoke with plaintiff and advised that defendant McKay had requested plaintiff's phone privileges be restricted because plaintiff had threatened defendant McKay in one of his voicemails. (*See id.*, ¶¶ 24.1, 24.2.) Plaintiff disputes that he threatened defendant McKay but claims that after speaking with Lt. Becker he nonetheless "corrected [his] behavior" in subsequent calls. (*See id.*, ¶¶ 3.6, 24.1, 24.2, 24.3.)

On May 30, 2018, plaintiff called defendant McKay again and left a message on his voicemail in which he accused defendant of working for the prosecutor and indicated he did not believe defendant was doing a good job. (*See id.*, ¶ 3.5, 3.6.) Plaintiff maintains that this message was not "vulgar or cussing," and that it contained no threats or fighting words. (*Id.*, ¶ 3.5.) Following this call, defendant McKay once again called the ICCF and this time apparently spoke with Lt. Bingham. (*Id.*, ¶¶ 3.3, 4.4.) Plaintiff claims that Lt. Bingham thereafter advised him that defendant had called and had requested that plaintiff be restricted from leaving complaints about him on his voicemail. (*Id.*) It appears that defendant McKay also advised plaintiff directly, both via telephone and in a letter, to stop leaving the objectionable messages. (*Id.*, ¶ 4.12.)

Plaintiff alleges that defendant McKay, by calling the ICCF on May 30, 2018 and requesting that staff "do something" about his objectionable voicemails, engaged in a civil conspiracy with Lt. Bingham "to retaliate and chill my speech for complaining in a [c]onstitutionally protected manner." (*Id.*, ¶ 4.1.) Plaintiff contends that not only did Lt. Bingham advise him he was restricted from leaving complaints on defendant McKay's voicemail, Lt.

REPORT AND RECOMMENDATION
PAGE - 3

Bingham also threatened him with a general restriction of his telephone privileges which would have precluded him from speaking with other persons, such as his mom, and would have impaired his ability to represent himself in his re-sentencing proceedings. (*See id.*, ¶¶ 4.5, 4.6, 4.8, 4.9.) Aside from the alleged restriction on leaving complaining messages on defendant's voicemail, plaintiff does not allege that any general restriction on his telephone privileges was actually imposed nor does he allege that he was precluded from placing calls to defendant McKay which were not complaining or otherwise objectionable.

## DISCUSSION

A defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the Court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The Court also liberally construes a *pro se* pleading. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). However, the Court "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

REPORT AND RECOMMENDATION
PAGE - 4

In order to sustain a claim under § 1983, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Neither private attorneys nor public defenders are considered state actors for purposes of bringing suit under § 1983. *See Polk County v. Dodson*, 454 U.S. 312 (1981). However, a defense attorney who conspires with state officials to deprive a client of his federal rights acts under color of state law and may be liable under § 1983. *See Tower v. Glover*, 467 U.S. 914, 923 (1984). In order to establish liability for a conspiracy in an action brought under § 1983, a plaintiff must "demonstrate the existence of an agreement or meeting of the minds" to violate constitutional rights. *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999)). Conspiracy is not itself a constitutional tort under § 1983, and a conspiracy claim does not enlarge the nature of a plaintiff's claims. *Lacey v. Maricopa County* 693 F.3d 896, 935 (9th Cir. 2012). Rather, there must always be proof of an underlying constitutional violation in order to support a conspiracy claim. *Id*.

Defendant McKay argues in his motion to dismiss that plaintiff's complaint fails to establish a claim under § 1983 because no constitutional right was violated and because he was not a state actor. (Dkt. 14 at 8-10.) Defendant is correct.

The First Amendment right to freedom of speech applies within the prison walls. *See*, *e.g.*,

1  *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).  In the context of a case involving a prisoner's

2  access to telephones, the Ninth Circuit has defined this First Amendment right as "the right to

3  communicate with persons outside the prison walls."  *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048

4  (9th Cir. 2002).  The Ninth Circuit explained in *Valdez* that "[u]se of a telephone provides a *means*

5  of exercising this right."  *Id.* (emphasis in original).

6      The test for determining whether a prison regulation encroaches on an inmate's

7  constitutional rights is that set forth in *Turner v. Safley*, 482 U.S. 78 (1987).  In *Turner*, the

8  Supreme Court held that a prison regulation is valid only if the regulation is "reasonably related"

9  to legitimate penological interests, and it identified four factors for courts to consider in

10  determining reasonableness:  (1) the existence of a 'valid, rational connection' between the

11  regulation and the legitimate governmental interest put forward to justify it; (2) the existence of an

12  alternative means of exercising the right that remains open to the prisoner; (3) the impact that

13  accommodation of the asserted constitutional right will have on guards and other inmates, and on

14  the allocation of prison resources; and (4) the absence of ready alternatives that fully accommodate

15  the inmate's rights at a *de minimis* cost to valid penological objectives.  *Id.* at 89-91.

16      Legitimate penological interests include "security, order, and rehabilitation."  *Procunier v.*

17  *Martinez*, 416 U.S. 396, 413 (1974).  A reviewing court "must accord substantial deference to the

18  professional judgment of prison administrators, who bear a significant responsibility for defining

19  the legitimate goals of a corrections system and for determining the most appropriate means to

20  accomplish them."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  The burden is not on the state

21  to prove the validity of a challenged regulation but is instead on the inmate to disprove it.  *Id.*

22      According to the allegations in the complaint, plaintiff engaged in a pattern of making

23  objectionable calls to defendant McKay, a pattern which defendant McKay apparently tried to

REPORT AND RECOMMENDATION
PAGE - 6

break by speaking with ICCF officials and by speaking with plaintiff directly.  Plaintiff's conduct in relation to those calls could arguably have been deemed to constitute criminal misconduct under RCW 9.61.230.[3]  The ICCF has a legitimate interest in restricting its prisoners from engaging in criminal behavior.  Even assuming the calls could not be deemed criminal in nature, the calls were clearly objectionable to the recipient and the ICCF also has a legitimate penological interest in preventing its prisoners from harassing individuals outside the facility.  It is notable that plaintiff does not allege he was restricted from all communication with defendant McKay, he alleges only that he was restricted from making "complaining" calls. And, despite Lt. Bingham's alleged threat to restrict plaintiff's telephone access generally, plaintiff makes no claim that Lt. Bingham actually followed through with that threat.  These facts simply do not implicate federal constitutional concerns.

        To the extent plaintiff complains that the restriction on his complaining calls to defendant McKay constituted retaliation, his claim also fails.  To prevail on a retaliation claim under § 1983, a plaintiff must show that he was retaliated against for exercising his constitutional rights, that the retaliatory action chilled the exercise of his First Amendment rights, and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline.

---

[3] RCW 9.61.230(1) provides as follows:

(1) Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person:

(a) Using any lewd, lascivious, profane, indecent, or obscene works or language, or suggesting the commission of any lewd or lascivious act; or

(b) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues; or

(c)  Threatening to inflict injury on the person or property of the person called or any member of his or her family or household;

is guilty of a gross misdemeanor[.]

REPORT AND RECOMMENDATION
PAGE - 7

1    *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Resnick v. Hayes*, 213 F.3d 443, 449

2    (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).  As discussed above, the

3    alleged restriction on plaintiff's harassing phone calls advanced legitimate penological goals and,

4    thus, plaintiff's retaliation claim necessarily fails.

5         Finally, the Court notes that nothing in the record suggests there was ever any agreement

6    or meeting of the minds between defendant McKay and Lt. Bingham to violate plaintiff's rights.

7    Plaintiff complains of a single phone call made by defendant McKay asking that prison officials

8    "do something" about plaintiff's objectionable conduct.  Such an allegation is wholly insufficient

9    to establish any conspiracy to violate plaintiff's constitutional rights.  Thus, plaintiff also fails to

10   demonstrate that defendant McKay is a state actor for purposes of § 1983.  In sum, plaintiff fails

11   to state any viable federal constitutional claim against defendant McKay under § 1983 and, thus,

12   all of plaintiff's federal claims against defendant McKay should be dismissed.

13                                   Pendent State Law Claim

14         In addition to the federal constitutional claims asserted by plaintiff in his complaint,

15   plaintiff also asserts a single state law claim against defendant McKay for defamation.  The

16   Supreme Court has stated that federal courts should refrain from exercising their pendent

17   jurisdiction when the federal claims are dismissed before trial.  *United Mine Workers v. Gibbs*,

18   383 U.S. 715, 726 (1966).  Because plaintiff's federal claims asserted against defendant McKay

19   are subject to dismissal based upon plaintiff's failure to establish any violation of his federal rights,

20   this Court should decline to exercise jurisdiction over plaintiff's state law claim.

21                                        CONCLUSION

22         Based on the foregoing, this Court recommends that defendant McKay's motion to dismiss

23   be granted, and that plaintiff's complaint and this action should be dismissed with prejudice as to

the federal constitutional claims asserted against defendant McKay and without prejudice as to the single state law claim asserted against defendant McKay.  A proposed Order accompanies this Report and Recommendation.

<u>OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **<u>December 4, 2020</u>**.

DATED this <u>9th</u> day of November, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 9