1
2
3
4
5
6                           UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
7                                     AT SEATTLE

8    JOSHUA D. LAMBERT,

9                           Plaintiff,              CASE NO. C19-1829-BJR-MAT

10           v.

11   ROBERT McKAY, *et al.*,                        REPORT AND RECOMMENDATION

12                           Defendants.

13

14                   INTRODUCTION AND SUMMARY CONCLUSION

15          This is a civil rights action proceeding under 42 U.S.C. § 1983.  Plaintiff Joshua Lambert,

16   who is currently confined at the Washington State Penitentiary in Walla Walla, Washington, is

17   proceeding with this action *pro se* and *in forma pauperis*.  Plaintiff identifies in his complaint

18   twenty-four claims for relief alleging violations of both federal constitutional law and state law,

19   all arising out of his confinement at the Island County Correctional Facility (ICCF) in 2018.  (*See*

20   Dkt. 6.)  This matter comes before the Court at the present time on plaintiff's motion for a partial

21   judgment on the pleadings against Island County (Dkt. 16), and on the motion of Island County

22   and seven Island County employees for a judgment on the pleadings with respect to all claims

23   asserted by plaintiff in his civil rights complaint (Dkt. 40).

REPORT AND RECOMMENDATION
PAGE - 1

1    Island County has filed a response opposing plaintiff's motion for a partial judgment on

2  the pleadings (Dkt. 34), and plaintiff has filed a reply brief in support of his motion (Dkt. 36).

3  Plaintiff has filed a response, albeit a cursory one, opposing defendants' motion for a judgment on

4  the pleadings (Dkt. 46), and defendants have filed a reply brief in support of their motion (Dkt.

5  48).  The Court, having reviewed the parties' motions, all associated briefing, and the balance of

6  the record, concludes that plaintiff's motion for a partial judgment on the pleadings should be

7  denied, defendants' motion for a judgment on the pleadings should be granted, and plaintiff's

8  complaint and this action should be dismissed with prejudice as to all federal constitutional claims

9  asserted against Island County and its employees, and without prejudice as to all state law claims

10  asserted against these defendants.

BACKGROUND

12    In July 2013, plaintiff was convicted in Island County Superior Court on multiple charges,

13  including murder charges involving the murders of his maternal and paternal grandfathers.  *See*

14  *State v. Lambert*, 199 Wn. App. 51 (2017); *State v. Lambert*, Island County Superior Court cause

15  number 11-1-00181-5.  Plaintiff received an exceptional sentence of 1200 months confinement.

16  *See id*.  One of plaintiff's murder convictions was reversed on appeal and, in May 2018, plaintiff

17  was temporarily transferred from Washington Department of Corrections ("DOC") custody back

18  to Island County for further proceedings.  *See id*.  Plaintiff was resentenced in June 2018 and was

19  thereafter returned to DOC custody.  *See id*.  Plaintiff alleges in this action various claims that

20  arose out of his confinement at ICCF in May and June 2018.

21    Defendants in this action include Island County, ICCF Chief Administrator Jose Briones,

22  ICCF Lieutenant William Becker, ICCF Lieutenant Eric Bingham, ICCF Sergeant Christine

23  Wright, ICCF Sergeant Derik Piechowski, Island County Sheriff's Office Records Clerk Mary

REPORT AND RECOMMENDATION
PAGE - 2

Kaye Weller, and ICCF Mental Health Provider Chalice Bailey.  (Dkt. 6 at 4-5.)  Plaintiff seeks injunctive and declaratory relief, and damages.  (*Id*. at 74.)

DISCUSSION

Plaintiff seeks a partial judgment on the pleadings with respect to a single ground for relief asserted against Island County, *i.e.*, that the ICCF mail policy violated his free speech rights because it prohibited inmates from receiving any materials printed off the internet.  (*See* Dkt. 16.) Island County, and the Island County employees named as defendants in this action, seek a judgment on the pleadings with respect to all claims asserted by plaintiff in his civil rights complaint.  (Dkt. 40.)

**A.     Applicable Standards**

*1.     Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c)*

The parties, in their respective motions, seek a judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  A judgment on the pleadings is properly granted when, taking all allegations in the pleadings as true, the moving party establishes that no material issue of fact remains and that it is entitled to judgment as a matter of law.  *Enron Oil Trading & Transportation Company v. Walbrook Insurance Company, Ltd.*, 132 F.3d 526 (9th Cir. 1997).

A motion pursuant to Rule 12(c) is reviewed under the same standard as a motion pursuant to Fed. R. Civ. P. 12(b)(6).  *See Gregg v. Hawaii, Department of Public Safety*, 870 F.3d 883, 887 (9th Cir. 2017).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Dismissal

REPORT AND RECOMMENDATION
PAGE - 3

may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the Court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The Court also liberally construes a *pro se* pleading. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). However, the Court "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

2.    *Section 1983 Standard*

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). That a plaintiff may have suffered harm, even if due to another's negligent conduct, does not itself demonstrate a violation of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

REPORT AND RECOMMENDATION
PAGE - 4

A defendant cannot be held liable under § 1983 solely on the basis of the individual's supervisory responsibility or position. *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691-694 (1978). Rather, a plaintiff must allege that a defendant's own conduct violated the plaintiff's civil rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-90 (1989). A local government unit or municipality can be sued as a "person" under § 1983. *Monell*, 436 U.S. at 691. However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id*. A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan County Commissioners v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell* 436 U.S. at 694).

In *Bryan County Commissioners*, the Supreme Court explained that

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Id*. at 404.

### 3.    *Qualified Immunity*

Qualified immunity protects § 1983 defendants from liability for civil damages so long as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

REPORT AND RECOMMENDATION
PAGE - 5

In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court set forth a two-prong test to be applied in evaluating claims of qualified immunity:  (1) whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id*. at 202.

**B.    Analysis**

*1.    ICCF Mail Policy (Counts One and Two)*

The first two counts of plaintiff's complaint pertain to an ICCF mail policy which, according to plaintiff, denied inmates access to "all speech items" printed off the internet.  Plaintiff claims that the challenged policy violated his rights to free speech and to due process.  These claims implicate Island County as the municipal entity under which ICCF operates, and Chief Briones as ICCF's chief policy maker.

a.    Free Speech (Count I)

Plaintiff asserts in count one of his complaint that his speech was violated by a jail policy which "forbade any and all speech items printed off the internet."  (Dkt. 6 at 8.)  Plaintiff's challenge is to a provision of the ICCF Inmate Manual which provides that inmates are not allowed to receive "Computer generated (down loaded material) books, magazines, photos, and newspapers."  (*See* Dkt. 17 at 3; Dkt. 37 at 15.)  Plaintiff maintains that this policy is interpreted as applying to all internet printouts, and he claims this has been confirmed "by many at ICCF."  (Dkt. 6 at 9.)  Plaintiff alleges that the policy violates his right to free speech because it restricts speech without a logical nexus to a legitimate penological interest, and he maintains that it is

REPORT AND RECOMMENDATION
PAGE - 6

1  clearly established in the Ninth Circuit that mail may not be rejected solely because it is printed

2  off the internet.  (*Id*. at 10-11.)

3  It is the free speech component of plaintiff's claim challenging the ICCF mail policy

4  regarding internet materials that is the subject of plaintiff's motion for a partial judgment on the

5  pleadings against Island County.  (Dkt. 16.)   Plaintiff submitted with his motion copies of

6  grievances referenced in the first count of his complaint.  (Dkt. 17.)  Defendants oppose plaintiff's

7  motion for a partial judgment on the pleadings (Dkt. 34), and they also seek a judgment on the

8  pleadings with respect to this claim (Dkt. 40).  Defendants contend that plaintiff's motion for a

9  judgment on the pleadings should be converted into one for summary judgment because plaintiff

10  presented with his motion evidence outside the pleadings; *i.e.*, the grievances referenced above.

11  (Dkt. 34 at 1, 4.)  However, because plaintiff referred to the grievance documents extensively in

12  the first count of his complaint (*see* Dkt. 6 at 9-10), the Court deems these documents to have been

13  incorporated by reference into the complaint.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th

14  Cir. 2003).   The Court therefore declines to convert plaintiff's motion for a judgment on the

15  pleadings into a motion for summary judgment.[1]

16  The Supreme Court has made clear that a prison inmate enjoys a First Amendment right to

17  send and receive mail.  *See Thornburgh v. Abbott* 490 U.S 401, 407 (1989).  However, a prison

18  may adopt regulations which impinge on an inmate's constitutional rights if those regulations are

19  "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

20

21

22  ─────────
   [1]  The Court also takes judicial notice of the ICCF and Island County policies underlying the claim asserted

23  by plaintiff in the first count of his complaint (Dkt. 35, Ex. A; Dkt. 37).  *See Ritchie*, 342 F.3d at 909 ("Courts may take judicial notice of some public records, including the 'records and reports of administrative bodies.'")

REPORT AND RECOMMENDATION
PAGE - 7

Legitimate penological interests include "security, order, and rehabilitation." *Procunier v. Martinez*, 416 U.S. 396, 413 (1974).

The Supreme Court, in *Turner*, identified four factors for courts to consider in determining the reasonableness of a prison regulation:  (1) the existence of a 'valid, rational connection' between the regulation and the legitimate governmental interest put forward to justify it; (2) the existence of an alternative means of exercising the right that remains open to the prisoner; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives that fully accommodate the inmate's rights at a *de minimis* cost to valid penological objectives.  *Id*. at 89-91.

Plaintiff relies on the Ninth Circuit's decision in *Clement v. California Department of Corrections*, 364 F.3d 1148 (9th Cir. 2004), to support his argument that he is entitled to a judgment on the pleadings with respect to the first count of his complaint.  In *Clement*, the Ninth Circuit affirmed a lower court ruling rejecting a blanket ban on internet-generated mail as unconstitutional for failure to satisfy the first prong of the *Turner* test. The Ninth Circuit determined that "[p]rohibiting all internet-generated mail is an arbitrary way to achieve a reduction in mail volume." *Id*. at 1152.

In this case, the record demonstrates that plaintiff's grievances regarding the mail policy as it pertains to the receipt of internet materials were rejected pursuant to provisions of the Island County Inmate Correction Facility Inmate Manual.  (*See* Dkt. 17 at 3-9; Dkt. 37 at 15.)  It is this policy which plaintiff challenges in this action.  Defendants argue in their response to plaintiff's motion for a partial judgment on the pleadings that the inmate manual, which purports to be an "Inmate Rule Book" (*see* Dkt. 37 at 9), does not reflect ICCF's policy on the processing of inmate

REPORT AND RECOMMENDATION
PAGE - 8

1   mail.  (Dkt. 34 at 6.)  Rather, according to defendants, ICCF's policy regarding the processing of

2   inmate mail is Policy 1008 of the Island County Sheriff's Office Custody Manual.  (*See id.*; Dkt.

3   35, Ex. A.)  While this may be true, the ICCF officials' responses to plaintiff's grievances suggest

4   that the policy *they* enforce is that set forth in the inmate manual.  The Court, however, need not

5   resolve this apparent incongruity because it does not affect the viability of plaintiff's free speech

6   claim.

7            Policy 1008 does not contain any express prohibition on internet materials.  The inmate

8   handbook appears to prohibit some internet generated materials, such as books, magazines, photos,

9   and newspapers, but it does not purport to place a blanket prohibition on internet generated

10  materials as did the policy at issue in *Clement* which the Ninth Circuit concluded violated the First

11  Amendment.  Thus, the policies at issue in this case are distinguishable from the policy at issue in

12  *Clement* and, thus, are not clearly violative of the First Amendment.

13           It appears that the crux of plaintiff's first count is actually that ICCF officials appear to

14  have interpreted the policy set forth in the inmate handbook as being slightly more restrictive with

15  respect to internet-generated materials than the policy, on its face, suggests.  However, plaintiff is

16  not in a position to bring an "as applied" challenge to the policy because, as defendants correctly

17  point out, plaintiff does not identify in his complaint any mail or printed material that was rejected

18  pursuant to the policy, he merely asserts that but for the policy he would have had access to a

19  broader range of materials, including "print outs related to my mental health and other types of

20  reading in general (*see* Dkt. 6 at 10)."  This assertion is too vague to demonstrate any constitutional

21  injury or, more importantly, to demonstrate that Island County was the moving force behind any

22  such injury.  Plaintiff's claim against Island County therefore fails because plaintiff has not

23  established that any policy of Island County caused a violation of his constitutional rights.

REPORT AND RECOMMENDATION
PAGE - 9

To the extent plaintiff alleges that Chief Briones should be held liable as the official policymaker for ICCF, his claim likewise fails because plaintiff has not identified either an unconstitutional policy or any harm resulting from the existing policies.  The first count of plaintiff's complaint should therefore be dismissed.

b.    Due Process (Count 2)

Plaintiff asserts in count two of his complaint that the challenged mail policy, and ICCF practice in relation to that policy, also violated due process.  (*Id*. at 11.)  Specifically, plaintiff contends that though ICCF provides notice of rejected materials printed off the internet, and permits inmates to appeal the rejection, this does not satisfy due process because such appeals are automatically denied without any actual review of the mail rejection.  (*Id*. at 11-12.)  Notably, however, plaintiff does not allege that he personally had any mail rejected pursuant to the policy, he appears to simply assume that this is what the process would look like if he had had such materials sent to him.  The due process component of plaintiff's challenge to the ICCF mail policy is clearly speculative and should therefore be dismissed.

2.    *Telephone Restrictions (Counts 3, 4, 5)*

The third, fourth and fifth counts of plaintiff's complaint pertain to restrictions and/or threatened restrictions on plaintiff's telephone access at ICCF.  (Dkt. 6 at 13-24.)  These three claims implicate the conduct of Lt. Bingham and Robert McKay, plaintiff's appointed stand-by counsel for his criminal proceedings in Island County Superior Court.[2]  Plaintiff asserts in count three of his complaint that his right to free speech was violated when Lt. Bingham "forbade [him]

---

[2] Mr. McKay was also identified as a defendant in plaintiff's complaint, and Mr. McKay has filed a separate motion to dismiss these counts as they pertain to him.  (Dkt. 14.)  Mr. McKay's motion to dismiss was addressed in a separate Report and Recommendation.

REPORT AND RECOMMENDATION
PAGE - 10

from complaining" to Mr. McKay.  (*See id*. at 13.)  Plaintiff asserts in count four of his complaint

that Lt. Bingham and Mr. McKay engaged in a civil conspiracy under § 1983 to retaliate against

him for "complaining in a constitutionally protected manner.  (*See id*. at 15.)  Finally, plaintiff

asserts in count five of his complaint that Lt. Bingham and Mr. McKay engaged in a civil

conspiracy to restrict his free speech.  (*See id*. at 22.)  The facts underlying these three claims are

set forth below.

On May 24, 2018, plaintiff, by his own admission, left several "vulgar and cussing"

messages on Mr. McKay's voicemail.  (*Id*. at 14.)  According to plaintiff, Mr. McKay thereafter

called the ICCF and spoke with Lt. Becker who, in turn, spoke with plaintiff and advised him that

Mr. McKay had requested plaintiff's phone privileges be restricted because plaintiff had threatened

Mr. McKay in one of his voicemails.  (*See id*. at 72-73.)  Plaintiff disputes that he threatened Mr.

McKay, but claims that after speaking with Lt. Becker he nonetheless "corrected [his] behavior"

in subsequent calls.  (*See id*. at 14, 72-73.)

On May 30, 2018, plaintiff called Mr. McKay again and left a message on his voicemail in

which he accused defendant of working for the prosecutor and indicated he did not believe

defendant was doing a good job.  (*See id*. at 14.)  Plaintiff maintains that this message was not

"vulgar or cussing," and that it contained no threats or fighting words.  (*Id*.)  Following this call,

Mr. McKay once again called the ICCF and this time apparently spoke to Lt. Bingham.  (*Id*. at 13,

15-16.)  Plaintiff claims that Lt. Bingham thereafter advised him that Mr. McKay had called and

requested plaintiff be restricted from leaving complaints about him on his voicemail.  (*Id*.)

Plaintiff claims that Lt. Bingham also threatened him with a general restriction of his

telephone privileges which would have precluded him from speaking with other persons, such as

his mom, and would have impaired his ability to represent himself in his re-sentencing

REPORT AND RECOMMENDATION
PAGE - 11

1    proceedings.  (*See id*. at 16-17.)  Aside from the alleged restriction on leaving complaining

2    messages on Mr. McKay's voicemail, plaintiff does not allege that any general restriction of his

3    telephone privileges was actually imposed nor does he allege that he was precluded from placing

4    calls to Mr. McKay which were not complaining or otherwise objectionable.

5           a.      Freedom of Speech (Counts 3 and 5)

6           The First Amendment right to freedom of speech applies within the prison walls.  *See*, *e.g.*,

7    *Thornburgh*, 490 U.S. at 407.  In the context of a case involving a prisoner's access to telephones,

8    the Ninth Circuit has defined this First Amendment right as "the right to communicate with persons

9    outside the prison walls."  *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002).  The Ninth

10   Circuit explained in *Valdez* that "[u]se of a telephone provides a *means* of exercising this right."

11   *Id*. (emphasis in original).

12          As explained above, a prison may adopt regulations which impinge on an inmate's

13   constitutional rights if those regulations are "reasonably related to legitimate penological

14   interests."  *Turner*, 482 U.S. at 89.  And, again, legitimate penological interests include "security,

15   order, and rehabilitation."  *Procunier*, 416 U.S. at 413. (1974).  The Supreme Court has made clear

16   that a reviewing court "must accord substantial deference to the professional judgment of prison

17   administrators, who bear a significant responsibility for defining the legitimate goals of a

18   corrections system and for determining the most appropriate means to accomplish them."  *Overton*

19   *v. Bazzetta*, 539 U.S. 126, 132 (2003).  The burden is not on the state to prove the validity of a

20   challenged regulation but is instead on the inmate to disprove it.  *Id*.

21          According to the allegations in the complaint, plaintiff had engaged in a pattern of making

22   objectionable calls to Mr. McKay, a pattern which Mr. McKay tried to break by speaking with

23   ICCF officials, including Lt. Bingham.  Plaintiff's conduct in relation to those calls arguably could

REPORT AND RECOMMENDATION
PAGE - 12

have been deemed to constitute criminal misconduct under RCW 9.61.230.[3]   The ICCF has a legitimate interest in restricting its prisoners from engaging in criminal behavior.  Even assuming the calls could not be deemed criminal in nature, the calls were clearly objectionable to the recipient and ICCF also has a legitimate penological interest in preventing its prisoners from harassing individuals outside the facility.  Plaintiff does not allege that he was restricted from all communication with Mr. McKay, he alleges only that he was restricted from making "complaining" calls.  And, despite Lt. Bingham's alleged threat to restrict plaintiff's telephone access generally, plaintiff makes no claim that Lt. Bingham actually followed through with that threat.  These facts simply do not implicate federal constitutional concerns and plaintiff's freedom of speech claims should therefore be dismissed

        b.      Retaliation (Count 4)

        To the extent plaintiff complains that the restriction on his complaining calls to Mr. McKay constituted retaliation, his claim also fails.  To prevail on a retaliation claim under § 1983, a plaintiff must show that he was retaliated against for exercising his constitutional rights, that the retaliatory action chilled the exercise of his First Amendment rights, and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline.

---

[3]  RCW 9.61.230(1) provides as follows:

(1) Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person:

(a) Using any lewd, lascivious, profane, indecent, or obscene works or language, or suggesting the commission of any lewd or lascivious act; or

(b) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues; or

(c)  Threatening to inflict injury on the person or property of the person called or any member of his or her family or household;

is guilty of a gross misdemeanor[.]

REPORT AND RECOMMENDATION
PAGE - 13

1   *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Resnick v. Hayes*, 213 F.3d 443, 449

2   (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). As explained above, the

3   alleged restriction on plaintiff's objectionable phone calls advanced legitimate penological goals

4   and no additional restrictions were apparently imposed. Thus, plaintiff's retaliation claim

5   necessarily fails and should be dismissed as well.

6               c.     Conspiracy (Counts 4 and 5)

7       Finally, to the extent plaintiff alleges that Lt. Bingham and Mr. McKay entered into a

8   conspiracy to violate his rights, his claim also fails. In order to establish liability for a conspiracy

9   in an action brought under § 1983, a plaintiff must "demonstrate the existence of an agreement or

10  meeting of the minds" to violate constitutional rights. *Crowe v. County of San Diego*, 608 F.3d

11  406, 440 (9th Cir. 2010) (quoting *Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283,

12  1301 (9th Cir. 1999)). Conspiracy is not itself a constitutional tort under § 1983, and a conspiracy

13  claim does not enlarge the nature of a plaintiff's claims. *Lacey v. Maricopa County* 693 F.3d 896,

14  935 (9th Cir. 2012). Rather, there must always be proof of an underlying constitutional violation

15  in order to support a conspiracy claim. *Id.*

16      As explained above, plaintiff has not established any underlying constitutional violation.

17  Moreover, nothing in the record suggests that there was ever any agreement or meeting of the

18  minds to violate plaintiff's rights. Plaintiff complains of a single phone call made by Mr. McKay

19  asking that Lt. Bingham "do something" about plaintiff's objectionable conduct. Such an

20  allegation is wholly insufficient to establish any conspiracy to violate plaintiff's rights, and

21  plaintiff's conspiracy claims should therefore be dismissed.

22          *3.    ICCF Book Policy (Counts 6, 7, 8)*

23

REPORT AND RECOMMENDATION
PAGE - 14

1     The sixth, seventh, and eighth counts of plaintiff's complaint pertain to an alleged ICCF

2    policy which permitted inmates to receive personal books through the mail, but prohibited inmates

3    from subsequently mailing the books out of the facility or otherwise releasing them to a third party,

4    or from taking the books with them upon their release from custody.  (Dkt. 6 at 24-30.)  Plaintiff

5    claims that this policy which permitted the confiscation of personal books violated his rights to

6    free speech and to due process, and forced him to give up his right to free speech in order to

7    preserve his rights under the takings clause.  (*See id.*)  These claims implicate Island County as the

8    municipal entity under which ICCF operates and Chief Briones as the ICCF's chief policymaker.

9    (*See id.*)

10     Defendants correctly note in their motion for judgment on the pleadings that plaintiff does

11    not cite to any official policy in support of his claims, and they argue that plaintiff's constitutional

12    claims regarding the confiscation of books necessarily fail because plaintiff does not allege that

13    any books he purchased were taken from him pursuant to ICCF policy.  (Dkt. 40 at 12-13.)

14    Plaintiff concedes in his complaint that he never had any books taken from him because he never

15    purchased any, knowing he would not be permitted to retain them.  (*See* Dkt. 6 at 24-30.)  Plaintiff

16    makes clear that he had the opportunity to order personal books had he chosen to do so.  The fact

17    that plaintiff refrained from purchasing books because he believed he would not be able to retain

18    them does not implicate First Amendment concerns.

19     Moreover, because plaintiff never ordered any books, and therefore never had any books

20    taken from him, he cannot demonstrate that any books were unlawfully taken from him in violation

21    of the Fourteenth Amendment.  Plaintiff's speculation of what might have occurred had he chosen

22    to purchase a book is not sufficient to establish a constitutional violation.  To the extent plaintiff

23    alleges that Chief Briones, as the chief policymaker, should be held liable for this alleged unlawful

REPORT AND RECOMMENDATION
PAGE - 15

book policy, his claim necessarily fails as plaintiff has not established that any such policy existed or, in any event, that he was harmed by any such policy. Plaintiff's claims pertaining to ICCF's alleged book policy should therefore be dismissed.

       4.      *Access to Textbook (Counts 9, 10, 11)*

The ninth, tenth, and eleventh counts of plaintiff's complaint pertain to restrictions imposed on plaintiff's ability to access his psychology textbook. (Dkt. 6 at 30-41.) Plaintiff claims that the restrictions violated his rights to free speech and equal protection, and that he was forced to give up these rights in order to retain his right to proceed *pro se* in his criminal case. (*See id.*) These claims appear to implicate the conduct of Chief Briones who allegedly ordered the restriction, and Lt. Becker who enforced the restriction and refused to "re-ask or fix it with Chief Briones." (*See id.* at 32-33, 36-37, 40-41.)

According to plaintiff, while he was confined at ICCF in 2018, there was a policy in place that permitted inmates to have used textbooks brought to them from outside the facility and allowed inmates to keep the books in their cells. (*Id.* at 30-31.) Plaintiff claims that after his textbook was dropped off at the facility, he was not permitted to keep it in his cell even though inmates are generally allowed to do so. (*Id.* at 32.) Plaintiff was instead required to store and access his textbook in the law library with other books he had stored there for use in his *pro se* criminal proceedings, apparently because the book was deemed relevant to his *pro se* defense. (*Id.* at 31-32.) Plaintiff maintains, however, that he was allowed to keep other books and research relevant to his case in his cell which renders the restriction on his textbook a "non sequitor [sic]." (*Id.*)

       a.      First Amendment (Count 9)

REPORT AND RECOMMENDATION
PAGE - 16

1    Plaintiff alleges that he suffered a constitutional injury because his access to speech

2    materials was restricted and because he had to choose between reading his textbook or working on

3    his *pro se* case with the materials that were in the law library.  (*Id*. at 32-33.)  Defendants argue in

4    their motion for judgment on the pleadings that the First Amendment does not guarantee an inmate

5    such as plaintiff the right to keep specific books in his cell.  (Dkt. 40 at 11.)  In support of this

6    argument, defendants cite to a number of cases, most from jurisdictions outside the Ninth Circuit,

7    which stand for the proposition that prisons can impose reasonable limitations on the number of

8    books an inmate can possess in his cell.  *See, e.g.*, *Kramer v. Conway*, 962 F. Supp. 2d 1333, 1349

9    (N.D. Georgia 2013); *Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005); *Weir v. Nix*, 114 F.3d

10   817, 821 (8th Cir. 1997); *Roy v. State*, 2006 WL 120328 (D. Ariz. 2006).

11   It is not clear in this case that the restriction imposed on plaintiff's ability to access his

12   psychology textbook was attributable to institutional limitations on the number of books plaintiff

13   was permitted to possess in his cell.  Indeed, as noted above, plaintiff claims that defendants'

14   reason for the restriction was that the textbook was relevant to is *pro se* defense and he had other

15   books for his *pro se* case stored in the law library.  (Dkt. 6 at 31-32.)  While this may have been a

16   reasonable restriction, defendants do not specifically address it and the Court cannot resolve the

17   First Amendment question on the authority cited by defendants.

18   Defendants also argue, however, that they are entitled to qualified immunity with respect

19   to this claim because plaintiff has cited to no case law clearly establishing that his First Amendment

20   rights were violated.  The Supreme Court has explained that "[a] Government official's conduct

21   violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a]

22   right [are] sufficiently clear' that every 'reasonable official would have understood that what he is

23   doing violates that right.'"  *al-Kidd*, 563 U.S. at 741 (alterations in original) (quoting *Anderson v.*

REPORT AND RECOMMENDATION
PAGE - 17

1   *Creighton*, 483 U.S. 635, 640, (1987)).   The Supreme Court has made clear that "'clearly

2   established law' should not be defined 'at a high level of generality.'"   *White v. Pauly*, 137 S.Ct.

3   548, 552 (2017) (per curiam) (quoting *al-Kidd*, 563 U.S. at 741).   Rather, the clearly established

4   law must be "particularized" to the facts of the case.   *Id.* (citing *Anderson*, 483 U.S. at 640).

5           Plaintiff has not identified any clearly established law to support the proposition that his

6   First Amendment rights were violated by not being permitted to keep his psychology textbook in

7   his cell rather than in the law library where he was still able to access the book on a daily basis.

8   The facts alleged by plaintiff suggest, at most, that plaintiff experienced a modest inconvenience

9   to his ability to access the textbook by being required to do so in the law library rather than in his

10  cell.  Plaintiff's First Amendment challenge to the restriction on access to his psychology textbook

11  fails and this claim should therefore be dismissed.

12                  b.      Equal Protection (Count Ten)

13          To the extent plaintiff alleges that not permitting him to keep his textbook in his cell when

14  other inmates were permitted to do so violates his right to equal protection, his claim also fails.

15  The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to "any

16  person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1.  The

17  Equal Protection Clause essentially mandates that state and local governments treat alike all

18  persons who are similarly situated.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439

19  (1985).  As a general matter, in order to state an equal protection claim under § 1983, a plaintiff

20  must show that the defendant acted with an intent or purpose to discriminate against the plaintiff

21  based upon membership in a protected class.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.

22  1998).

23

REPORT AND RECOMMENDATION
PAGE - 18

However, "[w]hen an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim." *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  In order to claim a violation of equal protection in a class-of-one case, a plaintiff must show that the defendant intentionally treated him differently from other similarly situated persons without a rational basis. *Id*.  Plaintiff indicates that this is the type of equal protection claim he intends to assert.  (Dkt. 6 at 33.)

A class-of-one plaintiff must also show that the difference in treatment resulted from non-discretionary state action.  *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 603 (2008).  The Supreme Court, in *Engquist*, explained as follows:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.  In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.  In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id*.

Plaintiff fails to demonstrate that he was "similarly situated" to other inmates.  According to plaintiff's own allegations, the requirement that he access his textbook in the law library rather than retaining it in his cell was related to accommodations made for plaintiff by ICCF officials because of plaintiff's *pro se* status, accommodations which included having legal books from an outside source brought into the facility for plaintiff and allowing them to be stored in the law library where plaintiff apparently had daily access to them. (*See* Dkt. 6 at 31-32.)  As noted above, plaintiff indicates that the reasons given for storing the textbook in the law library were that he had

REPORT AND RECOMMENDATION
PAGE - 19

other books stored there and the psychology textbook was deemed relevant to his legal work. (*See id*.) Plaintiff does not assert that there were other inmates in circumstances similar to his who were permitted to keep textbooks in their cells. Plaintiff asserts only that, pursuant to policy, all inmates are afforded the privilege of possessing textbooks in their cells. (*See id*. at 35.) This somewhat generic assertion is not sufficient to establish that plaintiff was "similarly situated" to other inmates.

Moreover, plaintiff's allegations suggest that Chief Briones' decision to require plaintiff to access his psychology textbook in the law library was very much a discretionary decision based on a subjective and individualized assessment of plaintiff's circumstances. Allowing the type of equal protection challenge asserted here would undermine the very discretion that prison officials are entrusted to exercise. For these reasons, plaintiff's equal protection claim fails and should therefore be dismissed.

c.      Relinquishment of Rights (Count 11)

Plaintiff also asserts, in relation to his psychology textbook, that he was forced to give up his free speech and equal protection rights in order to retain his right to proceed *pro se* in his criminal case. (Dkt. 6 at 40-41.) More specifically, plaintiff claims that if he had not been accessing legal books for his *pro se* case, which necessarily occurred in the law library, he would have been able to keep his psychology textbook in his cell. (*Id*.) Plaintiff fails to explain with any degree of clarity how this scenario gives rise to a constitutional violation and the claim asserted in count eleven of plaintiff's complaint should therefore be dismissed ss well.

5.      *Threats of Retaliation (Counts 12,13)*

The twelfth and thirteenth counts of plaintiff's complaint pertain to alleged threats of retaliation by ICCF staff if plaintiff were to subpoena them to testify in his criminal case. (*Id*. at

REPORT AND RECOMMENDATION
PAGE - 20

41-48.)  These counts implicate only the conduct of ICCF Sgt. Piechowski.  Plaintiff claims that he overheard Sgt. Piechowski tell another officer that if plaintiff were to subpoena Sgt. Piechowski to testify in his criminal proceedings, he would say he did not know what plaintiff was talking about.  (*Id*. at 41.)  Apparently at issue were psychotic symptoms Sgt. Piechowski purportedly observed that involved plaintiff "sometimes laugh[ing] at [his] psychotic phenomena."  (*Id*. at 43.)  According to plaintiff, such observations were relevant to his mental defense in court.  (*Id*.)  Plaintiff claims that Sgt. Piechowski's conduct surrounding the subpoena issue violated his right to be free from threats of retaliation and his right to free speech because Sgt. Piechowski's "threat" effectively precluded him from going to court and requesting a subpoena.  (*Id*. at 41, 46.)

To the extent plaintiff alleges that Sgt. Piechowski's comments to a fellow officer, which plaintiff claims he overheard, can reasonably be construed as a threat, his claim does not implicate federal constitutional concerns.  The Ninth Circuit has held that verbal harassment or abuse is not sufficient to state a claim under § 1983.  *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).  Accordingly, plaintiff's claim that Sgt. Piechowski threatened him must be dismissed.  Plaintiff's claim that Sgt. Piechowski violated his right to free speech is based upon the same alleged threat and likewise states no viable claim for relief under § 1983.  This claim should therefore be dismissed as well.

6.    *Handcuffing During Visitation (Count 14)*

Plaintiff asserts in the fourteenth count of his complaint that he was handcuffed during a visit with his private investigator and that this violated his right to free speech because it impaired his ability to go through a number of boxes of evidence and records brought by the investigator.  (Dkt. 6 at 48-52.)  This count appears to implicate the conduct of Chief Briones and either Lt.

REPORT AND RECOMMENDATION
PAGE - 21

1    Becker or Lt. Bingham, the individuals who allegedly issued the order that plaintiff be handcuffed,

2    and the conduct of Sgt. Wright who apparently enforced the order. (*See id*. at 48-49.)

3             As the Supreme Court has observed, "[t]he First Amendment literally forbids the

4    abridgment only of 'speech,'" though it has "long recognized that its protection does not end at

5    the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Indeed, the Supreme

6    Court has acknowledged that conduct may be "sufficiently imbued with elements of

7    communication to fall within the scope of the First and Fourteenth Amendments." *Id*. (citing

8    *Spence v. Washington*, 418 U.S. 405, 409 (1974)). "In deciding whether particular conduct

9    possesses sufficient communicative elements to bring the First Amendment into play, we have

10   asked whether "[a]n intent to convey a particularized message was present, and [whether] the

11   likelihood was great that the message would be understood by those who viewed it." *Id*. (citing

12   *Spence*, 418 U.S. at 410–411).

13            Plaintiff appears to identify the "speech" at issue in this claim as "digging thru" the records

14   brought by the investigator. (Dkt. 6 at 49.) Plaintiff alleges no facts from which this Court could

15   reasonably infer that digging through records constitutes expressive conduct entitled to First

16   Amendment protections. The Court notes as well that plaintiff had the investigator and the records

17   present in the same room at the same time and likely could have, without too much imagination,

18   found an efficient way to review and/or sort the records even with the handcuffs in place. This

19   claim is frivolous and should be dismissed.

20            7.       *Censorship of Requested Documents (Counts 15, 16, 19, 20)*

21            The fifteenth, sixteenth, nineteenth, and twentieth counts of plaintiff's complaint pertain to

22   records he requested from the Island County Sheriff's Office related to his stay at ICCF in May

23   and June 2018. (Dkt. 6 at 52-57, 62-66.) Plaintiff asserts that the records at issue were "censored"

REPORT AND RECOMMENDATION
PAGE - 22

in violation of his right to free speech, and he identifies the "censored" documents as two inmate grievances and several phone logs.  (*Id*. at 52-54, 62-63.)  Plaintiff further asserts that the withholding of these documents violated his right to equal protection.  (*Id*. at 54-57, 64-66.)  These counts implicate the conduct of Mary Kaye Weller, the civil records clerk at the Island County Sheriff's Office.

While plaintiff couches these four counts of his complaint as claims implicating federal constitutional concerns, the facts alleged appear to relate only to the manner in which Ms. Weller responded to public records requests made by plaintiff under state law.  Assuming these claims have merit, which is difficult to discern from the vague manner in which they are asserted in plaintiff's complaint, they appear to, at most, implicate issues of state law.  As plaintiff fails to allege facts demonstrating any violation of his federal constitutional rights in relation to his requests for documents, these claims should be dismissed.

8.      *Censorship of Mental Health Records (Counts 17, 18)*

The seventeenth and eighteenth counts of plaintiff's complaint pertain to medical records plaintiff requested from a member of the ICCF mental health staff, Chalice Bailey.  (Dkt. 6 at 58-61.)  Plaintiff asserts in count 17 that Ms. Bailey censored his speech when she advised him she would have to ask an attorney before providing him a copy of a requested medical record.  (*Id*. at 58.)  Plaintiff indicates that the record at issue was a report written by plaintiff's primary therapist at the Monroe Correctional Complex-Special Offender Unit, a Washington Department of Corrections facility.  (*Id*. at 59.)  Plaintiff asserts in count eighteen that the denial of access to the requested medical record also violated his right to equal protection.  (*Id*. at 60.)

Similar to the four counts discussed above, plaintiff couches the seventeenth and eighteenth counts of his complaint as claims implicating federal constitutional concerns, but the claims, again,

REPORT AND RECOMMENDATION
PAGE - 23

appear to implicate only state law concerns.  Defendants maintain that the sole source of plaintiff's right to the record he claims was denied arises from state law and not from federal law, and plaintiff offers nothing to rebut this.  And, indeed, plaintiff alleges no facts suggesting that the denial of the requested record gives rise to a viable claim for relief under 42 U.S.C. § 1983.  These two counts should therefore be dismissed.

### Pendent State Law Claims

In addition to the federal constitutional claims asserted by plaintiff in his complaint, plaintiff also asserts a number of state law claims against the Island County defendants.  (Dkt. 6 at 67-73.)  The Supreme Court has stated that federal courts should refrain from exercising their pendent jurisdiction when the federal claims are dismissed before trial.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Because plaintiff's federal constitutional claims are subject to dismissal based upon plaintiff's failure to state any viable claims for relief under § 1983, this Court should decline to exercise jurisdiction over plaintiff's state law claims.

### CONCLUSION

Based on the foregoing, this Court recommends that plaintiff's motion for a partial judgment on the pleadings be denied, that the Island County defendants' motion for a judgment on the pleadings be granted, and that plaintiff's complaint and this action be dismissed with prejudice as to plaintiff's federal constitutional claims and without prejudice as to plaintiff's state law claims.  A proposed Order accompanies this Report and Recommendation.

### OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect

REPORT AND RECOMMENDATION
PAGE - 24

your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on <u>**December 4, 2020**</u>.

DATED this <u>9th</u> day of November, 2020.

_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 25