The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA D. LAMBERT,
Plaintiff,

v.

ROBERT McKAY, et al.,
Defendants.

NO. 2:19-cv-1829

**ORDER (1) ADOPTING IN PART REPORT AND RECOMMENDATION RE: MOTIONS FOR JUDGMENT ON THE PLEADINGS;
(2) GRANTING PLAINTIFF'S MOTION FOR STAY; AND
(3) DENYING DEFENDANTS' MOTION TO QUASH**

## I. INTRODUCTION

This matter comes before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Mary Alice Theiler. The R&R recommends denying Plaintiff Joshua Lambert's Motion for Judgment on the Pleadings; granting Defendants' Motion for Judgment on the Pleadings, filed by Defendants Island County, Bailey, Becker, Bingham, Briones, Piechowski, Weller, and Wright ("Defendants"); and dismissing this case in its entirety. For the reasons that follow, the Court adopts in part the R&R, but declines to adopt the recommendation of dismissal as to Count 1 of the Complaint.

ORDER RE: REPORT AND RECOMMENDATION
- 1

## II. FACTUAL BACKGROUND

Plaintiff Joshua Lambert is currently confined at the Washington State Penitentiary in Walla Walla, Washington. He was convicted in 2013 in Island County Superior Court on multiple charges, including for the murders of his maternal and paternal grandfathers. *See State v. Lambert*, 199 Wn. App. 51 (2017); State v. Lambert, Island County Superior Court cause number 11-1- 00181-5. Lambert was sentenced to 1200 months confinement. In 2018, in connection with an appeal and resentencing, Lambert was temporarily transferred to the Island County Correctional Facility ("ICCF"), where he remained for approximately two months. Lambert's Complaint contains 20 federal and four state-law claims arising out of this time spent at the ICCF. Defendants in this case include Island County, a number of employees of ICCF and the Island County Sheriff's Office, and Lambert's former standby public defender, who was previously dismissed by the Court. Dkt. No. 61.

Plaintiff has moved for judgment on the pleadings on a single count in his Complaint, Count 1, which seeks damages and injunctive relief for a claimed violation of the First Amendment. Lambert claims that ICCF maintains a mail policy prohibiting inmates' access to all printed material downloaded from the internet, in violation of his free speech rights. Defendants deny they have such a policy, and argue that even if they did, Lambert has failed to demonstrate he has suffered any injury as a result.

Defendants have also moved for judgment on the pleadings, seeking dismissal of Lambert's Complaint in its entirety.

///

///

ORDER RE: REPORT AND RECOMMENDATION
- 2

### III. DISCUSSION

**A. Standard for Judgment on the Pleadings**

Both Plaintiff and Defendants have brought their motions under Fed. R. Civ. P. 12(c), which provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review of such a motion is the same as for a motion brought under Fed. R. Civ. P. 12(b)(6). *See Gregg v. Hawaii, Department of Public Safety*, 870 F.3d 883, 887 (9th Cir. 2017). As aptly set out in the R&R, the standard is that "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss, the Court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted).

Plaintiff has submitted with his motion copies of two grievances relating to Counts 1 and 2. *See* Decl. of Joshua Lambert, Dkt. No. 17. Defendants argue that the Court should therefore convert Plaintiff's motion to one for summary judgment, as provided in Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Count 1 of the Complaint, however, repeatedly refers to those grievances. *See, e.g.*, Compl. ¶¶ 1.4, 1.6, 1.8. The Court therefore deems the materials incorporated into the Complaint by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is

not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document."). Plaintiff's motion is thus properly considered under Fed. R. Civ. P. 12(c).

## B. Plaintiff's Motion for Extension of Time to File Objection; Defendants' Motion to Quash

Before the Court are Plaintiff's Motion for Stay or Extension, and Defendants' Motion to Quash, both related to Plaintiff's untimely-filed objections to the R&R. Dkt. No. 55; Dkt. No. 58. Judge Theiler issued the R&R on November 9, 2020; objections were due on November 30. Plaintiff did not file objections by that date; instead, he filed the Motion for Stay on December 4, 2020, asking for additional time to file his objections. Plaintiff submitted that he "went to segregation on 11/24/2020" and did not have access to his legal files. Defendants filed an objection to the Motion for Stay, noting that the Motion had been filed after the deadline for objections to the R&R, and arguing that being placed in segregation does not amount to "excusable neglect." Dkt. No. 56.

Nevertheless, Plaintiff filed his Objections to the R&R on December 14, 2020. Dkt. No. 57. Defendants subsequently filed a Motion to Quash Plaintiff's Untimely Objections. Plaintiff filed a response to Defendants' Motion, and a reply in support of his Motion for Stay. Dkt. Nos. 59, 60.

The law favors disposition on the merits, and Defendants have not claimed that they have suffered any prejudice as a result of Plaintiff's delayed filing. Moreover, there is no allegation that Plaintiff has acted in bad faith or for the purpose of delaying these proceedings, and his objections were two weeks late—in this context, not a substantial amount of time. The Court therefore exercises its discretion under Fed. R. Civ. P. 6(b) to extend the deadline, and will consider

ORDER RE: REPORT AND
RECOMMENDATION
- 4

Plaintiff's objections. Plaintiff's Motion for Extension is granted, and Defendants' Motion to Quash is denied.

## C. Count 1: First Amendment Challenge to ICCF "Incoming Mail" Policy

*1. ICCF Policy on Incoming Mail and Inmate Access to Internet-Downloaded Material*

In Count 1 of the Complaint, Plaintiff asserts that his "right to speech was violated because of a jail policy that forbade any and all speech items printed off the internet, . . . whether or not there was a legitimate penological interest." Compl., ¶ 1.1, Dkt. No. 6. The Complaint refers to the ICCF Inmate Manual, Appendix B, "6.1.0 Incoming Mail," which provides, in part, "Books, magazines, and newspapers will be accepted if it [*sic*] comes directly from the Publisher, Book Club, or retailer through the mail. . . . Computer generated (downloaded material) books, magazines, photos, and newspapers will not be accepted." *Id.*, ¶ 1.6; *see also* Suppl. Ex., Dkt. No. 37, at 11.

The Plaintiff alleges that despite the written policy being limited on its face to books and other specific types of "downloaded material" from the internet, Defendants' practice is in fact to prohibit "all internet print-outs." Compl., ¶ 1.4 ("This was confirmed to me by many [at] ICCF, and at least [Defendant] Lt. Becker."). Plaintiff concedes that he has "received permission for legal related print outs from the internet," but claims that this exception does not cure other defects in the practice, under which he does "not have access to print outs related to my mental health and other types of reading in general." *Id.*, ¶ 1.10.

In their response to Plaintiff's Motion, Defendants deny that Section 6.1.0 of the Inmate Manual reflects the ICCF "official policy" for processing inmate mail. Defs.' Resp. at 6 ("[Plaintiff] offers no evidence that the portion of the Inmate Handbook he cites reflects the ICCF's official policy on the processing of inmate mail. It is not."). Defendants claim instead that

ORDER RE: REPORT AND
RECOMMENDATION
- 5

the mail policy is found in the Island County Sheriff's Office Custody Manual, Policy 1008. *Id*.; *see* Decl. of Eric Bingham, ¶ 2., Ex. A. That provision makes no reference to any proscription on material downloaded from the internet, and instead outlines the standard for allowing or prohibiting inmate access to mail—specifically, whether rejection of any mailed material "is rationally related to a legitimate government interest, and whether alternate means of communicating with others is available." Policy 1008 further states "inmates are permitted to purchase, receive and read any book, newspaper, periodical or writing," provided it is "mailed directly from the publisher to a named inmate." *Id*.

   *2. Plaintiff's and Defendants' Motions for Judgment on Count 1*

Plaintiff's Motion seeks judgment only against Island County, and only on Count 1 of the Complaint. Prisoners retain their First Amendment right to receive information while incarcerated, which includes "material disseminated over the internet as well as by the means of communication devices used prior to the high-tech era." *Clement v. California Dep't of Corr*., 364 F.3d 1148, 1151 (9th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987); *Reno v. ACLU*, 521 U.S. 844, 868 (1997)). Plaintiff argues that it is "clearly established law" that a correctional facility may not restrict inmate access to printed material solely because it is downloaded from the internet. Pl. Mot. at 4 (citing C*lement*, 364 F.3d 1148). Plaintiff is seeking an injunction directing Island County to change its policy, and damages of $15,000.

Defendants' Motion also seeks judgment on Count 1, in their favor. As noted, Defendants deny they have a blanket proscription on all "internet printouts," and claim that their "official policy" is outlined in the Sheriff's Manual, which makes no reference to internet-generated material. They argue, alternatively, that even if the policy is as Plaintiff has alleged, Plaintiff has not suffered an injury sufficient to establish a First Amendment Violation.

ORDER RE: REPORT AND
RECOMMENDATION
- 6

The Court concludes that neither side is entitled to judgment on the pleadings on Count 1. Defendants deny that it is their "official policy" to reject all internet printouts. Nevertheless, it remains unclear from the record what Defendants' actual *practice* is regarding "internet printouts." Under *Monnell v. Department of Social Services of New York*, municipalities "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." 436 U.S. 658, 690–91 (1978). Furthermore, Defendants' assertion that "publications, magazines or newspapers" must come directly from the publisher does not answer the question of what the jail's policy or practice is towards other types of materials (*e.g.*, photographs, letters, unpublished written materials) printed from the internet. It is not possible to rule on the constitutionality of a policy or practice—in favor of either party—where the contours of that policy or practice (and not just the as-written "official policy") are in dispute and have not been clearly articulated to the Court.

Defendants also argue that even if the policy or practice were, as Plaintiff has alleged, a complete ban on all internet printouts, Plaintiff could not maintain his claim because he has failed to allege causation or any actual injury. *See* Defs.' Resp. at 8 (Lambert "fails to point to a single piece of mail or printed material that was denied to him as a result of the policy."). Defendants cite *Monell* for the proposition that a plaintiff making a § 1983 claim must demonstrate that the challenged policy caused an injury. Defs.' Resp. at 7-9 (citing *Monell*, 436 U.S. at 690) ("the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution"). The R&R agreed with Defendants, noting,

> [P]laintiff does not identify in his complaint any mail or printed material that was

ORDER RE: REPORT AND RECOMMENDATION
- 7

rejected pursuant to the policy, he merely asserts that but for the policy he would have had access to a broader range of materials, including "print outs related to my mental health and other types of reading in general (see Dkt. 6 at 10)." This assertion is too vague to demonstrate any constitutional injury or, more importantly, to demonstrate that Island County was the moving force behind any such injury. Plaintiff's claim against Island County therefore fails because plaintiff has not established that any policy of Island County caused a violation of his constitutional rights.

R&R at 9.

The Court declines to adopt this conclusion. Plaintiff alleged in his Complaint that he "did not have access to print outs related to my mental health and other types of reading in general." Compl., ¶ 1.10. He further argues that "the policy or practice was the causation of the constitutional injury because it was a 'prior restraint' on speech. . . . It would be absurd for me to have something mailed to me that I knew would get rejected." Pl.'s Rep. at 9; Dkt. No. 36. Interpreting this *pro se* argument generously, Plaintiff has correctly pointed out that alleging a mere *chilling* of free speech rights may, even in the absence of a more specific, concrete injury, make out a claim under the First Amendment. *See Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1212–13 (9th Cir. 2017) ("Nor is Hayes required to show any actual injury beyond the free speech violation itself to state a constitutional claim.") (citation omitted); *Laird v. Tatum*, 408 U.S. 1, 11 (1972) (explaining that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental [actions] that fall short of a direct prohibition against the exercise of First Amendment rights," where "the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging"); *see also White v. Lee*, 227 F.3d 1214, 1241 (9th Cir. 2000) ("In making their First Amendment claim, the plaintiffs were obligated to prove only that the officials' actions would have chilled or silenced "a

ORDER RE: REPORT AND
RECOMMENDATION
- 8

person of ordinary firmness from future First Amendment activities," not that their speech and petitioning were "actually inhibited or suppressed.") (*citing Mendocino Env't Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)). Assuming for purposes of this motion that the facts are as Plaintiff alleges, Defendants are not entitled to dismissal of Count 1 on the pleadings.

**D. Remaining Federal Claims (Counts 2-20), and State Claims (Counts 21-23)**

Plaintiff's Complaint contains 19 additional federal counts and three remaining state-law counts.[1] The R&R recommends dismissal of all of them. Count 2 is a due process claim based on the same set of facts of Count 1, outlined above. Counts 3, 4, and 5 arise from allegations that Defendants threatened to (but did not actually) limit Plaintiff's telephone privileges, in response to Plaintiff's attorney's complaint to jail staff that Plaintiff had left, in Plaintiff's own words, "vulgar and cussing" messages on the attorney's voicemail machine. Compl., ¶ 3.6. Counts 6, 7, and 8 relate to an alleged ICCF policy that allows inmates to receive books, but limits their ability to send them or remove them upon release from the facility. Counts 9, 10, and 11 challenge Defendants' requirement that Plaintiff keep a psychology textbook with his other legal materials, in the jail law library, rather than in his cell with him as Plaintiff would have preferred. Counts 12 and 13 claim retaliation and free speech violations by jail staff, based on Plaintiff having overheard Defendant Piechowski say that if subpoenaed to testify in Plaintiff's case, "[Piechowski] would say he did not know what [Plaintiff] was talking about." Compl., ¶ 12.2. Count 14 is based on allegations that Plaintiff was handcuffed during a meeting with his private investigator, violating his purported free speech rights by limiting his ability to go through boxes of records with her. Counts 15-20 relate to allegations that several Defendants failed to provide,

---

[1] The Court dismissed Count 24 against Defendant McKay on March 16, 2021. *See* Dkt No. 61.

ORDER RE: REPORT AND
RECOMMENDATION
- 9

upon Plaintiff's request, certain records pertaining to his stay at ICCF, including copies of two grievances, certain mental health records, and an unredacted phone log.

The Court adopts the R&R's reasoning and recommendation of dismissal as to all of these remaining federal claims in the Complaint. Each of these claims fails, as outlined in the R&R, because Plaintiff has failed to allege a cognizable injury; because the restrictions alleged are reasonably related to a legitimate penological interest; and/or because, in the absence of "clearly settled law" demonstrating a constitutional violation, the individual Defendants are entitled to qualified immunity.

Finally, Counts 21-23 claim violations of Washington's public records request laws, based upon the same factual allegations underlying the federal claims of Counts 15-20. Defendants seek dismissal of these state law claims, urging the Court to exercise its discretion to dismiss pendent state law claims when all federal claims have been dismissed. In this matter, the Court is not at this stage dismissing all federal claims. However, it is dismissing all federal claims that share the "common nucleus of operative fact" with the state law claims in this matter. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("The state and federal claims must derive from a common nucleus of operative fact."). The rationale for this Court to exercise jurisdiction of Plaintiff's state-law claims thus falls away. *See id.* The Court therefore dismisses the three remaining state law claims, Counts 21-23, without prejudice.

### IV. CONCLUSION

As outlined above, the Court grants Plaintiff's Motion for Stay, and denies Defendants' Motion to Quash. The Court further adopts the recommendations of the R&R except as follows: Defendants' Motion for Judgment on the Pleadings for dismissal of Count 1 is denied. Plaintiff's Motion for Judgment on the Pleadings on Count 1 is also denied. For the reasons outlined herein

ORDER RE: REPORT AND
RECOMMENDATION
- 10

and in the R&R, all other claims in the Complaint are dismissed.

The Court re-refers this case to the magistrate judge for further proceedings consistent with this order.

DATED this 21st day of May, 2021.

_Barbara J. Rothstein_
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER RE: REPORT AND RECOMMENDATION
- 11