UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA D. LAMBERT,

               Plaintiff,

    v.

ROBERT S. MCKAY et al.,

               Defendant.

Case No. C19-1829-BJR-SKV

REPORT AND RECOMMENDATION

Plaintiff is a state prisoner who is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action. Several of Plaintiff's claims were previously dismissed leaving Count 1 of the complaint as the sole remaining claim in this case. *See* Dkts. 53, 67. Count 1 pertains to an Island County Correctional Facility (ICCF) mail policy which Plaintiff alleges denied inmates access to "all speech items" printed off the internet. Dkt. 6 at 8. Plaintiff alleges this policy violated his First Amendment right to free speech. *Id.* Plaintiff's claim pertains to a period in 2018 when he was housed at the ICCF. *Id.* Defendants have now moved for summary judgment and dismissal of Count 1 of the complaint. Dkt. 106. Plaintiff has filed an opposition to the motion and Defendants have filed a reply. Dkts. 111, 113. Plaintiff subsequently filed a

1    "clarification" of his response to Defendants' motion for summary judgment and, at the Court's

2    direction, Defendants filed a supplemental reply.  Dkts. 114, 115, 116.

3        Having considered the parties' submissions, the balance of the record, and the governing

4    law, the Court recommends DENYING Defendants' motion for summary judgment, Dkt. 106,

5    or, alternatively, GRANTING the motion in part and DENYING the motion in part, as set forth

6    below.

7                                    BACKGROUND

8        In July 2013, Plaintiff was convicted in Island County Superior Court on multiple

9    charges, including murder charges involving the murders of his maternal and paternal

10   grandfathers.  *See State v. Lambert*, 199 Wn. App. 51 (2017); *State v. Lambert*, Island County

11   Superior Court cause number 11-1-00181-5; Dkt. 53; Dkt. 6 at 8; Dkt. 13 at 2.  Plaintiff received

12   an exceptional sentence of 1200 months confinement.  *See id.*  One of Plaintiff's murder

13   convictions was reversed on appeal and, in May 2018, Plaintiff was temporarily transferred from

14   Washington Department of Corrections ("DOC") custody back to Island County for further

15   proceedings.  *See id.*  Plaintiff was resentenced in June 2018 and was thereafter returned to DOC

16   custody.  *See id.*  Plaintiff's complaint originally alleged various claims that arose out of his

17   confinement at ICCF in May and June 2018.  *See* Dkt. 6.  Defendants in this action originally

18   included Island County, ICCF Chief Administrator Jose Briones, ICCF Lieutenant William

19   Becker, ICCF Lieutenant Eric Bingham, ICCF Sergeant Christine Wright, ICCF Sergeant Derik

20   Piechowski, Island County Sheriff's Office Records Clerk Mary Kaye Weller, and ICCF Mental

21   Health Provider Chalice Bailey.  Dkt. 6 at 4-5.  Plaintiff's sole remaining claim, Count 1, is

22

23

1    brought only against Defendants Island County and Chief Briones.[1]  *Id.* at 8.  Plaintiff's

2    complaint seeks injunctive and declaratory relief, and damages.  *Id.* at 74.

3            The parties previously filed motions seeking judgment on the pleadings.  Dkts. 16 & 40.

4    By order dated May 21, 2021, the Court denied Plaintiff's motion for judgment on the pleadings

5    and granted in part and denied in part Defendants' motion for judgment on the pleadings

6    dismissing all claims except those alleged in Count 1 of the complaint.  Dkt. 67.  As previously

7    summarized by the Court in addressing the parties' prior motions for judgment on the pleadings:

8            In Count 1 of the Complaint, Plaintiff asserts that his "right to speech was
      violated because of a jail policy that forbade any and all speech items printed off the
9    internet, . . . whether or not there was a legitimate penological interest." Compl., ¶ 1.1,
      Dkt. No. 6. The Complaint refers to the ICCF Inmate Manual, Appendix B, "6.1.0
10   Incoming Mail," which provides, in part, "Books, magazines, and newspapers will be
      accepted if it [sic] comes directly from the Publisher, Book Club, or retailer through the
11   mail. . . . Computer generated (downloaded material) books, magazines, photos, and
      newspapers will not be accepted." *Id.*, ¶ 1.6; *see also* Suppl. Ex., Dkt. No. 37, at 11. The
12   Plaintiff alleges that despite the written policy being limited on its face to books and
      other specific types of "downloaded material" from the internet, Defendants' practice is
13   in fact to prohibit "all internet print-outs." Compl., ¶ 1.4 ("This was confirmed to me by
      many [at] ICCF, and at least [Defendant] Lt. Becker."). Plaintiff concedes that he has
14   "received permission for legal related print outs from the internet," but claims that this
      exception does not cure other defects in the practice, under which he does "not have
15   access to print outs related to my mental health and other types of reading in general."
      *Id.*, ¶ 1.10.

16

17

18   _____
      [1] The Court notes that Lt. Becker and Sgt. Wright were originally named as Defendants in this action and
19   were the individuals who denied Plaintiff's grievances related to the policy in 2018 at the first two levels
      of review.  *See* Dkt. 6; Dkt. 108, Ex. B.  However, Count 1 of Plaintiff's complaint does not allege any
20   claims directly against Lt. Becker or Sgt. Wright.  Rather, Count 1 of the complaint states that "Chief Jose
      Briones was the Jail Administrator [in May and June of 2018 and] [h]e was the policy maker" and that
      "Island County is the entity to sue also because it is the municipality."  Dkt. 6 at 8.  The Court also
21   previously noted in the Report and Recommendation addressing the parties' previous motions for
      judgment on the pleadings, that Plaintiff's claim in Count 1 "implicate[s] Island County as the municipal
22   entity under which ICCF operates, and Chief Briones as ICCF's chief policy maker."  Dkt. 53 at 6.  In his
      objections to the Report and Recommendation, Plaintiff raised other objections but did not disagree with
      the Court's interpretation of his pleadings on this point.  Dkt. 57 at 6.  Defendants' motion for summary
23   judgment also construes Count 1 as brought only against Defendants Island County and Chief Briones
      and Plaintiff makes no argument in opposition, that the Court can discern, that he in fact intended to bring
      separate individual claims in Count 1 against Lt. Becker and Sgt. Wright.  Dkt. 106.

*Id.* at 5.  Plaintiff also alleges in Count 1 that "[i]t is alread[y] clearly established in the Ninth Circuit that mail may not be rejected solely because it is printed off the internet."  Dkt. 6 at 11.

In denying Defendants' previous motion for judgment on the pleadings with respect to Count 1, the Court found that "it remains unclear from the record what Defendants' actual practice is regarding 'internet printouts.'"  Dkt. 67 at 7.  The Court further found that, in the context of a motion for judgment on the pleadings, it was "not possible to rule on the constitutionality of a policy or practice—in favor of either party—where the contours of that policy or practice (and not just the as-written "official policy") are in dispute and have not been clearly articulated to the Court."  *Id.*  The Court further found that:

> Plaintiff alleged in his Complaint that he "did not have access to print outs related to my mental health and other types of reading in general." Compl., ¶ 1.10. He further argues that "the policy or practice was the causation of the constitutional injury because it was a 'prior restraint' on speech. . . . It would be absurd for me to have something mailed to me that I knew would get rejected." Pl.'s Rep. at 9; Dkt. No. 36. Interpreting this pro se argument generously, Plaintiff has correctly pointed out that alleging a mere chilling of free speech rights may, even in the absence of a more specific, concrete injury, make out a claim under the First Amendment. … Assuming for purposes of this motion that the facts are as Plaintiff alleges, Defendants are not entitled to dismissal of Count 1 on the pleadings.

*Id.* at 8-9.

Defendants now move for summary judgment with respect to Count 1, arguing that Plaintiff lacks any evidence demonstrating that his First Amendment rights were violated by any ICCF policy or custom.  Dkt. 106.

DISCUSSION

## A.    Relevant Legal Standards

### 1.    *Summary Judgment*

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-86. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim

1  or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

2  "The mere existence of a scintilla of evidence in support of the non-moving party's position is

3  not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d

4  1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with

5  allegations in the complaint, or with unsupported conjecture or conclusory statements."

6  *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

7  　　　　*2.　　Section 1983 Standard*

8  　　　　In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that

9  he suffered a violation of rights protected by the Constitution or created by federal statute, and

10  (ii) that the violation was proximately caused by a person acting under color of state law. *See*

11  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983

12  is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in

13  another's affirmative act, or omitted to perform an act which he was legally required to do that

14  caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981)

15  (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). "The inquiry into causation

16  must be individualized and focus on the duties and responsibilities of each individual defendant

17  whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v.*

18  *Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

19  **B.　　Analysis**

20  　　　　**1.　　*Monell* Claim Against Island County and Official Capacity Claim against**

21  　　　　　　　**Chief Briones**

22  　　　　In his complaint, Plaintiff alleges that the ICCF policy which denies inmates access to

23  "all speech items" printed off the internet violates his right to free speech because it restricts

1    speech without a logical nexus to a legitimate penological interest, and he contends that it is

2    clearly established in the Ninth Circuit that mail may not be rejected solely because it is printed

3    off the internet.  Dkt. 6 at 8-11.  The briefing makes clear that Plaintiff is referring to the Ninth

4    Circuit's decision in *Clement v. California Department of Corrections*, 364 F.3d 1148 (9th Cir.

5    2004), and is arguing that Defendants' practice with respect to internet-generated materials sent

6    through the mail is unconstitutional pursuant to *Clement*.  *See* Dkt. 16 at 4; Dkt. 111 at 9.  In this

7    case, the record demonstrates that Plaintiff's 2018 grievances regarding the mail policy

8    pertaining to the receipt of internet materials were rejected pursuant to provisions of the ICCF

9    Inmate Manual.  *See* Dkt. 17 at 3-9; Dkt. 37 at 15; Dkt. 108, Ex. B.  It is the overbroad

10   application of this policy implemented as a blanket ban on internet-generated materials which

11   Plaintiff challenges in this action.  *See* Dkt. 6 at 8-11.

12          The Supreme Court has made clear that a prison inmate enjoys a First Amendment right

13   to send and receive mail.  *See Thornburgh v. Abbott*, 490 U.S 401, 407 (1989); *Witherow v. Paff*,

14   52 F.3d 264, 265 (9th Cir. 1995).  However, a prison may adopt regulations which impinge on an

15   inmate's constitutional rights if those regulations are "reasonably related to legitimate

16   penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Legitimate penological

17   interests include "security, order, and rehabilitation."  *Procunier v. Martinez*, 416 U.S. 396, 413

18   (1974).  The Supreme Court, in *Turner*, identified four factors for courts to consider in

19   determining the reasonableness of a prison regulation: (1) the existence of a 'valid, rational

20   connection' between the regulation and the legitimate governmental interest put forward to

21   justify it; (2) the existence of an alternative means of exercising the right that remains open to the

22   prisoner; (3) the impact that accommodation of the asserted constitutional right will have on

23   guards and other inmates, and on the allocation of prison resources; and (4) the absence of ready

1  alternatives that fully accommodate the inmate's rights at a de minimis cost to valid penological

2  objectives.  *Turner*, 482 U.S. at 89-91.

3      Generally, a facial challenge to a regulation requires the plaintiff to show "that no set of

4  circumstances exists under which [the regulation] would be valid[,] ... that the [regulation] lacks

5  any plainly legitimate sweep … [or that] a substantial number of its applications are

6  unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *United States v.*

7  *Stevens*, 559 U.S. 460, 472-73 (2010) (internal quotation marks and citations omitted); *see also*

8  *Jones v. Sinclair*, C14–1241–RAJ–MAT, 2014 WL 8849985, at *6-7 (W.D. Wash. Nov. 18,

9  2014) (applying *Stevens* to a DOC Policy).  On the other hand, an "as-applied" claim "challenges

10  only one of the rules in a statute, a subset of the statute's applications, or the application of the

11  statute to a specific factual circumstance[.]"  *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th

12  Cir. 2011) (citations omitted).  The Ninth Circuit has held that the difference between as-applied

13  and facial challenges "lies only in whether all or only some ... subrules (or fact-specific

14  applications) are being challenged, the substantive legal tests used in the two challenges are

15  'invariant.'"  *Id.* (internal citation omitted).

16      Under Section 1983, a plaintiff may maintain a cause of action against a municipality

17  only when "the action that is alleged to be unconstitutional implements or executes a policy

18  statement, ordinance, regulation, or decision officially adopted and promulgated by that body's

19  officers," or implements or executes a less formal "governmental custom."  *Monell v. Dep't of*

20  *Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978) (quotation omitted); *see also*

21  *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) ("In order to

22  establish municipal liability, a plaintiff must show that a policy or custom led to the plaintiff's

23  injury.") (quotation omitted).  This does not mean the relevant policy or custom itself must be

1    unconstitutional but there must be "a direct causal link between a municipal policy or custom

2    and the alleged constitutional deprivation" and the policy or custom must be "the moving force

3    behind the constitutional violation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-388

4    (1989).

5          Under *Monell*, municipalities are subject to liability in three situations: "when the

6    plaintiff was injured pursuant to [1] an expressly adopted official policy, [2] a long-

7    standing practice or custom, or [3] the decision of a final policymaker." *Ellins v. City of Sierra*

8    *Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) (quotations omitted). "[A]n act performed pursuant

9    to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly

10    subject a municipality to liability on the theory that the relevant practice is so widespread as to

11    have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403-

12    404 (1997). Furthermore, once the plaintiff has demonstrated that a custom existed, the plaintiff

13    need not necessarily demonstrate that "official policy-makers had actual knowledge of the

14    practice at issue." *Navarro v. Block*, 72 F.3d 712, 714–15 (9th Cir. 1995); *but see Blair v. City of*

15    *Pomona*, 223 F.3d 1074, 1080 (9th Cir. 2000) ("open to the [municipality] to show that the

16    custom was not known to the policy-makers"). However, "[l]iability for improper custom may

17    not be predicated on isolated or sporadic incidents; it must be founded upon practices of

18    sufficient duration, frequency and consistency that the conduct has become a traditional method

19    of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

20             *a)*    *Expressly Adopted Official Policy/The Policy as Written*

21          Plaintiff argues that Defendants' policy constitutes a blanket ban on all internet articles.

22    Dkt. 6 at 8-9. He argues this is unconstitutional because it is clearly established in the Ninth

23    Circuit under *Clement*, that mail may not be rejected solely because it is printed off the internet.

*Clement*, 364 F.3d 1148; Dkt. 6 at 10-11. In *Clement*, the Ninth Circuit affirmed a lower court ruling rejecting a blanket ban on internet-generated mail as unconstitutional for failure to satisfy the first prong of the *Turner* test. *Clement*, 364 F.3d at 1152. The Ninth Circuit determined that "[p]rohibiting all internet-generated mail is an arbitrary way to achieve a reduction in mail volume." *Id.*

The Court notes that in his complaint, Plaintiff does not directly challenge the constitutionality of the policy as written, or as it is expressly officially adopted, which specifically limits the policy's applicability to books, magazines, photos, and newspapers, and requires that they be mailed directly from the publisher, Book Club, or retailer, not printed off the internet and mailed. *See* Dkt. 6. Nor does Plaintiff specifically argue that this restriction to the receipt of these limited specific materials from limited specific sources (publisher, Book Club, or retailer) violates the constitution. *Id.* Rather, Plaintiff's claim in this case is that ICCF officials have developed a practice or custom of interpreting and applying the policy set forth in the Inmate Handbook as a blanket ban on internet-generated materials, i.e., more restrictively than the policy, as written, provides. *Id.* Plaintiff simply does not present a clear claim in his complaint challenging the policy as it is written. Absent a specific allegation, challenge, or argument, Plaintiff's complaint fails to properly raise or state a claim challenging the policy as written or on the basis that the expressly adopted official policy violated his constitutional rights for purposes of municipal liability, and the Court should dismiss those claims, or decline to consider them, on that basis.

However, to the extent Plaintiff's complaint can be construed to raise a challenge to the policy as written, or a challenge on the basis that the expressly adopted official policy violated his constitutional rights for purposes of municipal liability, Plaintiff's claim as raised in his

complaint is limited to arguing that the policy as written constitutes a blanket ban on internet materials and is therefore unconstitutional under *Clement*.[2]  *Clement*, 364 F.3d 1148.  Plaintiff fails to so demonstrate.  Rather, on its face, the policy at issue in the Inmate Handbook prohibits *some* internet generated materials, specifically, books, magazines, photos, and newspapers, but it does not purport to place a blanket prohibition on internet-generated materials as did the policy at issue in *Clement* which the Ninth Circuit concluded violated the First Amendment.  *Id.* Furthermore, as written, the policy does not prohibit the identified materials (books, magazines, photos, and newspapers) entirely but provides only that they cannot be printed off the internet and sent to Plaintiff but must instead come directly from the publisher, Book Club, or retailer. Thus, as written, the policy at issue in this case is distinguishable from the policy at issue in *Clement* and Plaintiff fails to establish a constitutional violation on the grounds that the policy, as written, or as officially adopted, constitutes a blanket ban on internet articles.[3]  *Clement*, 364 F.3d 1148.  Accordingly, to the extent Plaintiff's complaint can be construed to raise a challenge

---

[2] Plaintiff also reiterates that the blanket nature of the policy is the focus of his claim in his opposition to Defendants' motion for summary judgment.  *See* Dkt. 111 at 10 (Stating "[my complaint] is based on a blanket ban on internet generated mail" and "I am suing regarding a blanket ban on all internet generated items.").

[3] Defendants also point out in their motion that certain limited "publisher only" restrictions, requiring that certain materials be sent directly from the publisher and not from any other individual or source through the mail, have been upheld against constitutional challenge in other cases.  *See* Dkt. 106 at 7 (citing cases addressing certain "publisher only" rules).  However, as noted above, to the extent Plaintiff's complaint can even be construed to raise a challenge to the policy as written or as officially adopted, Plaintiff's claim is limited to arguing that the policy on its face constitutes a blanket ban on internet materials and is therefore unconstitutional under *Clement*.  *Clement*, 364 F.3d 1148.  As the Court has determined that the policy as written is not a blanket ban on internet-generated materials, the Court does not analyze the issue further as Plaintiff fails to present a clear challenge to the policy as written, or officially adopted, in his complaint beyond, at very most, this limited claim.  The Court also notes that because Plaintiff's complaint did not present his claim as a direct challenge to the policy as written, or officially adopted, but instead as constituting a blanket ban on internet-generated materials as interpreted and applied in custom or practice, in the Court's opinion, that issue is not adequately briefed and addressed in the context of this motion.

REPORT AND RECOMMENDATION - 11

1    to the policy as written, or as expressly officially adopted, as constituting a blanket ban on

2    internet-generated materials, Defendants are entitled to summary judgment.

3                    b)        *Practice or Custom*

4            Plaintiff's actual claim, which he raises clearly, specifically, and adequately in his

5    complaint, is that ICCF officials have adopted a practice or custom of interpreting and applying

6    the policy in the Inmate Handbook to prohibit *all* internet-generated materials and that it is this

7    interpretation and application (rather than the policy as written) that violates his constitutional

8    rights under *Clement*. *Clement*, 364 F.3d 1148; *see* Dkt. 6 at 8-11; Dkt. 111 at 10. Defendants

9    argue that Plaintiff lacks any evidence demonstrating that his First Amendment rights were

10   violated by any ICCF policy, practice, or custom, and that therefore they are entitled to summary

11   judgment. Dkt. 106 at 1-3. Defendants argue that there is no evidence that Plaintiff had any

12   mail or printed material rejected during the relevant period, and that Plaintiff otherwise lacks

13   sufficient evidence of a practice or custom at ICCF constituting a blanket ban on internet-

14   generated materials. *Id.*

15           In support of their motion, Defendants present the declaration of William F. Dennis,

16   Chief Jail Administrator of the ICCF during the period between 2011 and 2013 when Plaintiff

17   was initially housed at the facility. Dkt. 109. Defendants also present the declaration of Jose

18   Briones, the current Chief Jail Administrator of the ICCF. Dkt. 108. Chief Briones also held the

19   position of chief during the period in 2018 when Plaintiff was housed at the facility which is the

20   period giving rise to Plaintiff's claims here. *Id.* Defendants also cite to and rely upon the mail

21   rejections issued to Plaintiff between 2011 and 2013, and to Plaintiff's 2018 grievances. Dkt.

22   105 at 52-56; Dkt. 106; Dkt. 107; Dkt. 108.

23           Defendants' evidence shows that when Plaintiff was initially housed at ICCF in or around

2011 to 2013 his mail was rejected on four occasions. Dkt. 105 at 52-56. The record reflects

that one of these correspondences was rejected because it bore no return address, and a second

was rejected because it was published material that did not come directly from the publisher.[4]

*Id.*; Dkt. 109. A third item was initially rejected on the grounds that it was "internet articles –

not correspondence." *Id.* The record reflects that this material was a newspaper article about

Plaintiff's case that was not sent directly from the publisher and, per former Chief Dennis'

declaration, this was material which, "as explained in the ICCF Inmate manual, was not

permissible." *Id.*; Dkt. 107, Ex. A. The record also reflects that this material was subsequently

provided to Plaintiff based on an Island County Superior Court order directing that the material

be issued to Plaintiff on the grounds that the newspaper article was related to Plaintiff's criminal

case and was relevant to his defense.[5] *Id.* The record reflects a fourth item was also initially

rejected on the grounds that it was "computer generated" under the terms of the Inmate Manual,

and that these materials were subsequently provided to Plaintiff under the authority of the

Superior Court order on the grounds that they constituted "legal material."[6] *Id.*

Defendants also present copies of Plaintiff's 2018 grievances and responses relevant to

his claim here which read as follows:

> Initial Grievance:
> Complaint: Pg 10 of the Inmate Handbook states I am not allowed to receive:
> 'computer generated (down loaded material) books, magazines, photos, and newspapers.'
> This is a violation of my constitutional rights, esp. speech, due process, and equal

---

[4] It appears, according to former Chief Dennis' declaration, that this material was a newspaper article on newsprint, not printed out on regular paper, that was not sent directly from the publisher. Dkt. 109 at 2.

[5] The record reflects that the Superior Court judge ordered that the material be provided to Plaintiff, and that she also stated during the hearing that she "would allow news articles that are published on the Internet to be provided to [Plaintiff]." *See* Dkt. 107, Ex. A.

[6] The exact nature of this material is not entirely clear from the record. However, former Chief Dennis' declaration indicates the material was 31 pages sent from Plaintiff's mother and was delivered to Plaintiff on April 26, 2013, on the grounds that it was "legal material" under the Superior Court judge's order. Dkt. 105 at 52-56; Dkt. 109. This is also material which Plaintiff asserts in his declaration (discussed in more detail below) included internet-generated materials that were not books, magazines, photos, or newspapers. Dkt. 112 at 3.

protection. It also effects my access to the courts because I need literature/info related to the law and mental health.

        Suggested Remedy: Please change the rule/policy to allow internet print outs, and thru the mail.
…
        Grievance Response: Is not a grievable issue.

        Explanation: In your grievance dated 5/14/2018 you referred to the incoming mail section (6.1.0 APPENDIX B) in the INMATE MANUAL.  You are concerned about not being able to receive computer generated (downloaded material) books, magazines and newspapers.  If it is material related to legal material or regarding your case you will be able to receive it.  If something is refused, you will get written notice that the material has been denied and the reason for the denial.  You will have the right to have the decision reviewed by a supervisor.

Appeal:
        Complaint: The response contained no grievance log #. I contend it is a grievable issue; the policy in general is still in place; and, it still forbids me to get other items not related to my case sent in…
        Suggested Remedy: Please change entire rule.  Thank you.
…
        Grievance Response: Is not a grievable issue.

        Explanation: The previous grievance was logged, but the number was not written on the reply to you, that has been corrected and a corrected copy was placed with your legal material to be given to you today.
        Sgt Wright answered your question on the previous grievance.  Again, as per 6.1.0 in the inmate manual "computer generated (down loaded material) books, magazines, photos's [sic] and newspapers will not be accepted.  The exceptions to 6.1.0 are if those materials are related to your current court case then yes they would be allowed.
        If you are not satisfied with this response you may again appeal it in writing to the facility administrator.

Appeal:
        Complaint: This is appealing the grievance appeal log # 052218-LI.
        I would still please like the policy to be changed as a whole to allow internet articles and print outs that are of other subject matter than legal subjects also.

        Suggested Remedy: Same.

        Grievance Response: Is not a grievable issue.

        Explanation: Mr. Lambert I am in receipt of your Grievance Appeal #052218-L1.  You have indicated that you would like the current policy and inmate handbook changed to allow you access to legal materials and mental health materials.  Specifically you have requested access to computer generated or down loaded materials so that they may be mailed in.  You have further indicated that this is a violation of your constitutional rights, due process and equal protection.

Upon review of our current process you have access to the legal materials through the legal law library. You are permitted to make written requests which will be retrieved if they meet the standard. You also have access to our current selection of law library books upon request.

As per current practice in the Island County Jail you are permitted to have family and friends mail in books or approved literature from an outside vendor that are mental health related.

In final review I do not see how access to the above processes violates your rights or your due process rights. I find that the processes in place are legally acceptable and no changes to our policy or handbook are going to [sic] made at this time.

Dkt. 108, Ex. B.[7] Chief Briones also addressed these grievances and responses in his declaration, stating:

As noted in [the grievance responses] the ICCF made exceptions for legal materials and materials related to Mr. Lambert's court case. See p. 2, response of C. Wright; p. 4 response of Lt. W.E. Becker. Additionally, the ICCF also permitted Mr. Lambert to access further materials through the jail's law library. Finally, as noted in my own response to Mr. Lambert's grievance, per the current practice in the Island County Jail, Mr. Lambert was permitted to have family and friends mail in books or approved literature from outside vendors that were related to mental health. Given the number of options Mr. Lambert had to access the material he sought, I do not believe this policy or its implementation violated his rights under the First Amendment. …

Regulations such as those contained in the Inmate Handbook restricting inmates from receiving internet-generated materials through the mail except directly from publishers are vital to aid in jail staff's efforts to prevent the introduction of contraband into the facility. This is particularly true in jurisdictions such as Island County, where limited jail resources do not enable the facility to staff armies of mail screeners.

Dkt. 108 at 2.

Plaintiff asserts that even though no specific mail was actually rejected in 2018, because he knew the policy was a blanket ban on internet-generated materials, his First Amendment rights were chilled because he did not seek to have items sent in that he knew would be rejected. Dkt. 111 at 8; Dkt. 112 at 1. Plaintiff asserts in his complaint that but for the application of the policy as a blanket ban on internet-generated materials, he would have had access to a broader range of materials, including "print outs related to my mental health and other types of reading in general[.]" Dkt. 6 at 10. Plaintiff asserts that he knew the policy was, in practice, a blanket ban

---

[7] The initial response to Plaintiff's grievance was written by Sgt. Wright, the second response was written by Lt. Becker, and the third response was written by Chief Briones. Dkt. 108, Ex. B

because several staff members at ICCF told him that the prohibition on internet-generated materials "did not just apply to the items listed as examples in the written policy, but that this policy did not allow [Plaintiff] to get anything printed off the internet." Dkt. 111 at 5.

Plaintiff states in his declaration that the statements regarding the application of the policy as a blanket ban on internet-generated materials were made to him by former ICCF Chief Dennis when Plaintiff was first housed at the jail in or around 2011-2013, as well as by Sgt. Wright and Lt. Becker in 2018. Dkt. 111 at 4, 14; Dkt. 112 at 1-3. Plaintiff states that he asked Sgt. Wright "specifically if [he] could receive other internet articles if they were not [the] things listed in the [written] policy [i.e. books, magazines, photos, and newspapers]" and that Sgt. Wright told him the policy "applied to everything printed off the internet not just the items listed in the policy[.]" Dkt. 112 at 1-2. Plaintiff further states in his declaration that he made the same inquiry of Lt. Becker and received the same response as he had received from Sgt. Wright. [8] *Id.* Plaintiff further states in his declaration that former Chief Dennis told him that "the policy applied to anything printed off the internet and specified that it did not just apply to the examples in the policy." *Id.* Finally, Plaintiff states in his declaration that he also "witnessed articles that were rejected that were not books, magazines, photos, or newspapers" in 2013 that he received permission to retrieve from his property box after they were initially rejected only because they were research for a court case in which he was proceeding *pro se. Id.* Plaintiff identifies this material as the "43 pages of internet printouts referred to in former Chief Dennis' declaration." Dkt. 111 at 5. However, it appears clear from the record that Plaintiff is referring to the 31 pages of internet-generated material which former Chief Dennis stated was initially rejected and

---

[8] Sgt. Wright and Lt. Becker also responded to Plaintiff's 2018 grievances at the first two levels of review.

subsequently provided pursuant to the Superior Court order directing that it be provided as

relevant to Plaintiff's criminal case. *Id.*; Dkt. 109 at 2.

   The Court finds that, based on the record, a genuine issue of material fact remains as to

whether Defendants maintained a practice or custom, or applied the Inmate Handbook policy in a

way, that constituted a blanket ban on internet-generated materials in violation of the First

Amendment and *Clement*. *Clement*, 364 F.3d 1148.  Defendants do not come forward with

affirmative evidence establishing that no such practice or custom existed, but instead argue that

Plaintiff lacks sufficient evidence of such a practice or custom.  However, Defendants' own

evidence raises questions as to whether such a practice or custom existed during the relevant

period.  For instance, in his final appeal of his 2018 grievance, Plaintiff states: "I would still

please like the policy to be changed as a whole to allow internet articles and print outs that are of

other subject matter than legal subjects also." Dkt. 108, Ex. B.  In the response to the grievance,

however, Chief Briones states only that Plaintiff has access to legal materials through the law

library and that family and friends can mail Plaintiff books or "approved literature" from an

outside vendor that are mental health related. *Id.*  Chief Briones' response does not directly

address Plaintiff's request to allow internet articles and print outs that are of other subject matter

than legal subjects, nor does he address Plaintiff's access to, or Defendants' policy or practice

with respect to, internet-generated materials other than books, newspapers, magazines or photos.

*Id.*  Chief Briones also states in his declaration that "[r]egulations such as those contained in the

Inmate Handbook restricting inmates from receiving internet-generated materials through the

mail except directly from publishers are vital to aid in jail staff's efforts to prevent the

introduction of contraband into the facility.  This is particularly true in jurisdictions such as

Island County, where limited jail resources do not enable the facility to staff armies of mail

1    screeners." Dkt. 108.  This statement does not specifically limit the scope of the regulation on

2    internet-generated materials to books, magazines, newspapers, and photographs, (as written in

3    the Inmate Handbook) and at the very least leaves open a question of fact as to whether there is a

4    practice or custom in place of prohibiting all internet-generated materials.

5          Furthermore, Plaintiff presents evidence indicating that a custom or practice of banning

6    all internet-generated material was in place at ICCF.  Specifically, Plaintiff presents evidence of

7    statements made to him by former Chief Dennis in or around 2011-2013, and by Sgt. Wright and

8    Lt. Becker in 2018, indicating that such a custom or practice was in place. [9]  In reply, Defendants

9    challenge the quality of Plaintiff's evidence, noting that Plaintiff offers no declaration from any

10   of these ICCF officers nor corroboration that these conversations occurred.  Dkt. 113 at 2-4.

11   Defendants also argue that Plaintiff could have obtained additional evidence related to these

12   statements or supporting his claim during discovery but failed to do so.  *Id.*  Defendants argue

13   that Plaintiff's self-serving testimony as to the purported statements of others, and regarding the

14   internet-generated articles that were initially rejected that were not books, magazines,

15   newspapers, or photos, is insufficient to avoid summary judgment.  *Id.*  The Court disagrees.

16         Defendants do not appear to specifically argue that Plaintiff's statements regarding the

17   statements made to him by former Chief Dennis, Sgt. Wright, and Lt. Becker are inadmissible

18   per se as hearsay or otherwise.  However, the Court does note that, in the first instance, Federal

19   Rule of Evidence 801 provides that a statement is not hearsay if that "statement is offered against

20   an opposing party and" "was made by the party's ... employee on a matter within the scope of

21

22   _____
     [9] The Court notes that although the statements by former Chief Dennis were made in or around 2011-
23   2013, they are relevant to the extent they constitute some evidence of an ongoing custom or practice at
     ICCF which Plaintiff also presents some evidence (through the statements by Sgt. Wright and Lt. Becker)
     continued into the relevant period in 2018.

1   that relationship and while it existed[.]" Fed. R. Evid. 801(d)(2). Here, non-defendants Dennis,

2   Wright, and Becker, were employees of Island County when the statements were made, the

3   implementation of jail policies were arguably within the scope of their employment, and

4   Defendants do not specifically argue otherwise. Accordingly, the information before the Court

5   suggests that these statements are not hearsay and may be properly considered at summary

6   judgment. *See Milliken v. Sturdevant*, No. C18-05326, 2020 WL 2512381, at *3 (N.D. Cal. May

7   15, 2020) (finding statements by non-defendant employee admissible evidence at summary

8   judgment against defendant employer) *appeal dismissed sub nom. Milliken v. C. Studervant*, No.

9   20-16192, 2020 WL 7383656 (9th Cir. Dec. 1, 2020).

10          Furthermore, the fact that Plaintiff might have obtained more evidence in discovery and

11   that he does not submit additional corroborating evidence regarding the statements made by

12   former Chief Dennis, Sgt. Wright, and Lt. Becker, does not render the evidence submitted

13   necessarily inadequate at the summary judgment stage. Rather, at summary judgment, courts are

14   required to view the evidence in the light most favorable to the nonmoving party. *See Leslie v.*

15   *Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). Here, viewing the record as a whole and

16   viewing the facts and evidence presented, including Chief Briones' response to Plaintiff's 2018

17   grievance, Chief Briones' declaration, statements in Plaintiff's declaration regarding former

18   Chief Dennis, Sgt. Wright, and Lt. Becker, and with respect to the internet-generated materials

19   discovered in his property box, in the light most favorable to Plaintiff, the Court concludes that

20   genuine issues of material fact remain that preclude summary judgment.

21          Plaintiff's complaint also asserts a claim against Chief Briones in his official capacity,

22   stating that he is liable because he is "the policymaker" at ICCF. Dkt. 6 at 8. "A suit against a

23   governmental officer in his official capacity is equivalent to a suit against the governmental

entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  Accordingly, for

the same reasons discussed above, the Court concludes that genuine issues of material fact

remain that preclude summary judgment with respect to Plaintiff's claim against Chief Briones

in his official capacity as well.[10]

Accordingly, Defendants' motion for summary judgment should be denied with respect

to Plaintiff's claims against Island County and Chief Briones in his official capacity that ICCF

officials have adopted a practice or custom of (or interpreted and applied the policy in the Inmate

Handbook as) prohibiting all internet-generated materials in violation of Plaintiff's constitutional

rights under the First Amendment and *Clement*.  *Clement*, 364 F.3d 1148.

c)      *Chief Briones, Individual Capacity*

Plaintiff's complaint does not raise a separate claim in Count 1 against Chief Briones in

his individual capacity.  "In many cases, the complaint will not clearly specify whether officials

are sued personally, in their official capacity, or both. 'The course of the proceedings in such

cases typically will indicate the nature of the liability sought to be imposed.'" *Kentucky v.

Graham*, 473 U.S. 159, 167 n. 14 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)).

Here, the "course of the proceedings" reasonably indicates that Chief Briones is being sued in his

official capacity only.  A supervisor may only be liable under § 1983 "if there exists either (1)

his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal

connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen

v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989).  Count 1 of Plaintiff's complaint states only that

Chief Briones was the Jail Administrator at the time of the alleged constitutional violations and

---

[10] Defendants do not address whether the claims against Island County and the official capacity claim against Chief Briones are duplicative or whether the official capacity claim is subject to dismissal on that basis.  Accordingly, the Court declines to address that issue here.

that he is "the policymaker." Dkt. 6 at 8. The complaint then proceeds to allege that in practice

the challenged policy constituted a blanket ban on internet-generated materials but does not, as

far the Court can discern, link Plaintiff's challenges to any alleged wrongful action or inaction

or personal involvement on the part of Chief Briones individually. Plaintiff alleges no facts

against Chief Briones in his complaint that the Court can discern that would support a claim

against him in his individual capacity. Furthermore, in his objections to the prior Report and

Recommendation issued on the parties' motions for judgment on the pleadings, Plaintiff clarifies

that he "brought this claim [in Count 1] under official capacity." Dkt. 57 at 6.

However, if the District Judge disagrees and finds Plaintiff has sufficiently alleged a

claim against Chief Briones in his individual capacity: (1) to the extent Plaintiff's complaint can

be construed to raise a challenge to the policy as written as constituting a blanket ban on internet-

generated materials, the Court should grant Defendants' motion for summary judgment on

qualified immunity grounds; and (2) to the extent Plaintiff raises a challenge to the

implementation or application of the policy in the Inmate Handbook in practice as a blanket ban

on internet-generated materials, the Court should deny Defendants' motion for summary

judgment on qualified immunity grounds.

"Qualified immunity 'protects all but the plainly incompetent or those who knowingly

violate the law.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (quoting *White v.

Pauly*, 137 S. Ct. 548, 551 (2017)). "In § 1983 actions, qualified immunity protects government

officials from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (internal quotation marks

and citations omitted); *see also Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022). "Qualified

1    immunity balances two important interests—the need to hold public officials accountable when

2    they exercise power irresponsibly and the need to shield officials from harassment, distraction,

3    and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223,

4    231 (2009); *see also Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018) (as amended).

5           Unless plaintiff makes a two-part showing, qualified immunity shields government

6    officials from liability on claims for damages under § 1983.  The plaintiff must show both: (1)

7    the official(s) violated a federal statutory or constitutional right, and (2) the unlawfulness of their

8    conduct was "clearly established at the time" meaning that, at the time of the official's conduct,

9    the law was sufficiently clear that every reasonable official would understand that what he is

10   doing is unlawful.  *City of Escondido v. Emmons*, 139 S. Ct. 500 (2019); *District of Columbia v.*

11   *Wesby,* 138 S. Ct. 577, 589 (2018).

12          When qualified immunity is reviewed in the context of a defense motion for summary

13   judgment, the evidence must be considered in the light most favorable to the plaintiff with

14   respect to central facts.  *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).  "Government

15   officials are not entitled to qualified immunity if (1) the facts '[t]aken in the light most favorable

16   to the party asserting the injury ... show [that] the [defendants'] conduct violated a constitutional

17   right' and (2) 'the right was clearly established' at the time of the alleged violation."  *Bonivert v.*

18   *City of Clarkston*, 883 F.3d 865, 871–72 (9th Cir. 2018) (quoting *Saucier v. Katz*, 533 U.S. 194,

19   201 (2001), *rev'd on other grounds by Pearson*, 555 U.S. 223; *see also Saucier*, 533 U.S. at 202

20   ("The relevant, dispositive inquiry in determining whether a right is clearly established is

21   whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

22   confronted.").  If a "genuine issue of material fact exists that prevents a determination of

23   qualified immunity at summary judgment, the case must proceed to trial."  *Serrano v. Francis*,

1   345 F.3d 1071, 1077 (9th Cir. 2003).  "Once the defense of qualified immunity is raised by the

2   defendant, the plaintiff bears the burden of showing that the rights allegedly violated were

3   'clearly established.'"  *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000).  Moreover,

4   "'[the] two prongs of the [qualified immunity] analysis need not be considered in any particular

5   order, and both prongs must be satisfied for a plaintiff to overcome a qualified immunity

6   defense.'"  *Scott v. Cty. of San Bernardino*, 903 F.3d 943, 948 (9th Cir. 2018) (quoting *Shafer v.*

7   *Cty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017))

8           To determine whether there was clearly established law, the Court has stated, "[w]hile

9   there does not have to be a case directly on point, existing precedent must place the lawfulness of

10  the particular [action] beyond debate."  *Wesby*, 138 S. Ct. at 590 (internal citation and quotation

11  marks omitted).  A clearly established right exists if "controlling authority or a robust consensus

12  of cases of persuasive authority" have held, on facts that are close or analogous to the current

13  case, that such a right exists.  *Hines v. Youseff*, 914 F.3d 1218, 1229 (9th Cir. 2019).  "Clearly

14  established law" should not be defined at a high level of generality; it must be "particularized" to

15  the facts of the case.  *See White v. Pauly*, 137 S. Ct. 548, 551 (2017); *Ashcroft v. al-Kidd*, 563

16  U.S. 731, 742 (2011).  The Supreme Court has repeatedly admonished the Ninth Circuit not to

17  define clearly established law at a high level of generality.  *See, e.g, City & Cnty. of San*

18  *Francisco, Calif. v. Sheehan*, 575 U.S. 600, 613 (2015).

19          "To be clearly established, a right must be sufficiently clear that every reasonable official

20  would have understood that what he is doing violates that right."  *Taylor v. Barkes,* 575 U.S.

21  822, 825 (2015) (per curiam) (internal quotation marks and citation omitted); *see also Sampson*,

22  974 F.3d at 1018–19 (internal quotation marks and citation omitted) ("A constitutional right is

23  clearly established if every reasonable official would have understood that what he is doing

violates that right at the time of his conduct.").  Even if the violated right was clearly established

at the time of the violation, it may be "difficult for [the defendant] to determine how the relevant

legal doctrine … will apply to the factual situation the [defendant] confronts… . [Therefore, i]f

the [defendant's] mistake as to what the law requires is reasonable ... the [defendant] is entitled

to the immunity defense." *Saucier*, 533 U.S. at 205; *Kennedy v. City of Ridgefield*, 439 F.3d

1055, 1061 (9th Cir. 2006).  Moreover, the "high standard is intended to give officers breathing

room to make reasonable but mistaken judgments about open legal questions." *Ioane*, 939 F.3d

at 956 (internal quotation marks and citation omitted).

To the extent Plaintiff's complaint can be construed to raise a challenge to the policy as

written as constituting a blanket ban on internet-generated materials, Chief Briones is entitled to

qualified immunity on the grounds that Plaintiff fails to show a constitutional violation

occurred[11] and fails to show that any clearly established law existed at the time establishing that

the policy as written was unconstitutional.  As discussed above, *Clement* addressed a blanket

restriction on all internet printed materials and found such a restriction to be unconstitutional.

*Clement* did not address a more limited restriction on internet-generated books, magazines,

newspapers, and photographs, which permitted inmates to receive those items directly from the

publisher, Book Club, or retailer.  *Clement*, 364 F.3d 1148.  Thus, *Clement* did not clearly

establish that a policy prohibiting inmates from receiving these limited items as internet-

---

[11] Defendants also present some argument and evidence, in addressing any potential individual capacity claim against Chief Briones, that Chief Briones is entitled to qualified immunity because the policy as written is also "reasonably related to legitimate penological interests" under the *Turner* factors.  Dkt. 106 at 7, 11.  However, as noted above, to the extent Plaintiff's complaint can even be construed to raise a challenge to the policy on its face or as officially adopted, Plaintiff's claim is limited to arguing that the policy constitutes a blanket ban on internet materials and is therefore unconstitutional on that basis under *Clement*.  *Clement*, 364 F.3d 1148.  As the Court has determined that the policy as written is not a blanket ban on internet materials, the Court does not analyze the issue further as Plaintiff fails to present a clear challenge to the policy as written in his complaint beyond, at very most, this limited claim.

1    generated materials through the mail but permitting such materials to be sent directly from the

2    publisher, Book Club, or retailer, violated the First Amendment.  *Id.*  Plaintiff points to no

3    controlling authority or robust consensus of cases of persuasive authority, nor is the Court aware

4    of any, establishing that, in 2018, such a policy violated the First Amendment.  Accordingly, to

5    the extent Plaintiff's claims can be construed to raise a challenge to the policy as written as

6    constituting a blanket ban on internet-generated materials, Chief Briones would be entitled to

7    qualified immunity.

8         With respect to Plaintiff's challenge to the policy as constituting a blanket ban on

9    internet-generated materials as-applied or implemented in practice, Chief Briones would not be

10   entitled to qualified immunity.  As discussed above, a genuine issue of material fact remains

11   regarding whether a policy or practice constituting a blanket ban on internet-generated materials

12   existed as-applied or implemented, rather than as written.  Furthermore, the Court finds it was

13   clearly established in 2018 under *Clement*, that a blanket ban on all internet printed materials was

14   unconstitutional.  *Clement*, 364 F.3d 1148.

15        Accordingly, for the reasons above, the Court should find that Plaintiff's complaint does

16   not raise a separate claim in Count 1 against Chief Briones in his individual capacity.  However,

17   if the District Judge disagrees and finds Plaintiff has sufficiently alleged a claim against Chief

18   Briones in his individual capacity: (1) to the extent Plaintiff's complaint can be construed to raise

19   a challenge to the policy as written as constituting a blanket ban on internet-generated materials,

20   the Court should grant Defendants' motion for summary judgment on qualified immunity

21   grounds; and (2) to the extent Plaintiff raises a challenge to the implementation or application of

22   the policy in the Inmate Handbook in practice as a blanket ban on internet-generated materials,

23

1  the Court should deny Defendants' motion for summary judgment on qualified immunity

2  grounds.

3        **2.**    **Injunctive Relief**

4        Defendants also move for summary judgment with respect to Plaintiff's claims for

5  injunctive relief on the grounds that Plaintiff lacks standing, and fails to the meet the "case or

6  controversy" requirement of Article III, because he is no longer housed at the ICCF and "lacks a

7  reasonable expectation that the policy of which he complains could ever be applied to him in the

8  future[.]" Dkt. 106 at 10-11.  Plaintiff argues in opposition that his claims for injunctive relief

9  remain viable and are not moot because he has already been returned to ICCF once for

10  resentencing, has a direct appeal pending, and still has collateral attacks on his conviction

11  available, so he has "a likelihood of going back for resentencing or retrial."  Dkt. 111 at 9-10.

12        A federal court's jurisdiction depends on the existence of a live case or controversy.

13  *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996).  To satisfy the "case or controversy"

14  requirement of Article III, a plaintiff seeking injunctive relief must show that they "ha[ve]

15  sustained or [are] immediately in danger of sustaining some direct injury as the result of the

16  challenged official conduct and the injury or threat of injury must be both real and immediate,

17  not conjectural or hypothetical."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal

18  quotations omitted).  Furthermore, "[t]o have standing to assert a claim for prospective injunctive

19  relief, a plaintiff must demonstrate 'that he is realistically threatened by a repetition of [the

20  violation].'"  *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012) (brackets in original)

21  (quoting *Lyons*, 461 U.S. at 109).

22        Moreover, a case is moot "when it has 'lost its character as a present, live controversy of

23  the kind that must exist if [the court is] to avoid advisory opinions on abstract propositions of

law.'" *Oregon v. FERC*, 636 F.3d 1203, 1206 (9th Cir. 2011) (per curiam) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969) (per curiam)).  "A claim is moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"  *Alvarez v. Hill*, 667 F.3d 1061, 1063-64 (9th Cir. 2012) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 338, 396 (1980)).  Because "[t]he jurisdiction of federal courts depends on the existence of a 'case or controversy' under Article III of the Constitution," we must dismiss a case that has become moot.  *Pub. Util. Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996) (quoting *GTE Cal., Inc. v. FCC*, 39 F.3d 940, 945 (9th Cir. 1994)).

Generally, unless a suit has been certified as a class action, an inmate's release or transfer to another prison will render any claims for injunctive or declaratory relief moot because the inmate is no longer subject to the prison conditions or policies they challenge.  *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Alvarez*, 667 F.3d at 1064; *Andrews v. Cervantes*, 493 F.3d 1047, 1053, n.5 (9th Cir. 2007); *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001) ("It is true that when a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility.").  Courts have found an exception to this general rule, and allowed review of an injunctive or declaratory relief claim, where the prisoner is transferred to a different facility within the same prison system and "the policy pursuant to which the alleged violation occurred was 'system wide' and one of the defendants was in charge of the policy[.]" *Walker v. Beard*, 789 F.3d 1125, 1132-33 (9th Cir. 2015).  Furthermore, under another exception, a court may review a claim that is moot if it implicates a practice that is "capable of repetition yet evading review."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1287 (9th Cir. 2013).  In such cases, "'there must be a reasonable likelihood that the same party will be subject to the action again,'" and the "'duration of the challenged action or injury must be too

1    short to be fully litigated.'" *Id.* (quoting *NAACP, W. Region v. City of Richmond*, 743 F.2d 1346,

2    1353 (9th Cir. 1984)).

3          In order to demonstrate there is a reasonable likelihood that a prisoner who has been

4    transferred to a different prison facility will be subject to the illegal action again, there must be a

5    "reasonable expectation" that the prisoner will return to the original facility and be subjected to

6    the same action. *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding

7    claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been

8    moved and "he has demonstrated no reasonable expectation of returning to [the prison]").

9          Here, Defendants argue Plaintiff's claims for injunctive relief should be dismissed

10   because Plaintiff "lacks a reasonable expectation that the policy of which he complains could

11   ever be applied to him in the future[.]" Dkt. 106 at 10-11. Plaintiff asserts that his claim for

12   injunctive relief remains viable and is not moot because he has an eighty-year sentence, he has

13   already been transferred back to ICCF once for re-sentencing, and he has a direct appeal pending

14   and collateral attacks on his conviction remain available. Dkt. 111 at 8-9. He argues that, in

15   light of these factors, he has "a likelihood of going back [to ICCF] for resentencing or retrial."

16   *Id.* The Court agrees that, in light of the factors identified by Plaintiff, he has sufficiently raised

17   an issue of fact as to whether there is a reasonable expectation that he may be returned to ICCF,

18   and subject to the alleged offending conduct, in the future. *See Demery v. Arpaio*, 378 F.3d

19   1020, 1027 (9th Cir. 2004) (noting a previous acknowledgment in *Mitchell*, 75 F.3d at 528, that a

20   pending application for post-conviction relief that, if successful, would entitle a plaintiff to a new

21   trial could "arguably satisf[y]" the "reasonable expectation" requirement with respect to transfer

22   back to the pretrial facility, and finding that evidence that one plaintiff had been detained at a

23   pretrial facility 20 times in 6 years and detention on more than 1 occasion for 11 other plaintiffs

1  sufficient to demonstrate a "reasonable expectation" that the same parties would be

2  reincarcerated at the pretrial facility and subjected to the same offending conduct). For the same

3  reasons, and in the absence of a more specific challenge from Defendants, the Court finds

4  Plaintiff has also sufficiently raised an issue of fact, at the summary judgment stage, "that he is

5  realistically threatened by a repetition of [the violation]" and that there is a "threat of immediate

6  and irreparable harm" to Plaintiff as a result of the policy. *Melendres*, 695 F.3d at 997 (internal

7  quotation and citation omitted); *Hodgers-Durgin*, 199 F.3d at 1042.[12]

8      Neither party presents evidence regarding the question of whether this is the sort of

9  violation which is of inherently limited duration such that it is likely always to become moot

10  before federal court litigation is completed. *See Native Vill. of Noatak v. Blatchford*, 38 F.3d

11  1505, 1509 (9th Cir. 1994), *overruled on other grounds by Bd. of Trustees of Glazing Health &*

12  *Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019). However, the Court notes that where a

13  facility is primarily a "pretrial detention center", some Courts have held that "the length of

14  detention in the county jail is short enough that any individual detainee's claim would probably

15  become moot before trial." *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1117-18 (9th Cir.

16  2003); *Demery*, 378 F.3d at 1027; *see also Mitchell*, 75 F.3d at 528 (noting the district court's

17  finding, not challenged on appeal, that evidence presented that the duration of an inmate's stay in

18  the jail was typically only 38 days was sufficient to meet the "evading review" prong of the

19  mootness exception); *Gerstein v. Pugh*, 420 U.S. 103, 111 n. 11 (1975) ("[p]retrial detention is

20  by nature temporary, and it is most unlikely that any given individual could have his

21  constitutional claim decided on appeal before he is either released or convicted."). There is

22

23  [12] The Court notes that the only specific argument Defendants raise in support of their motion seeking dismissal of the injunctive relief claims is that Plaintiff "lacks any reasonable expectation that the policy of which he complains could ever be applied to him in the future[.]" Dkt. 106 at 10-11. As such, the Court addresses only this specific challenge to Plaintiff's claims for injunctive relief.

1    insufficient evidence in the record at this stage for the Court to properly assess whether the ICCF

2    is a facility of this nature.  However, the Court notes that the record shows Plaintiff was detained

3    originally at ICCF only for pretrial purposes and again for a very short period for resentencing

4    purposes.

5          Accordingly, the Court finds that, at this stage, Defendants have failed to meet their

6    burden at summary judgment of demonstrating that Plaintiff's claims for injunctive relief fail to

7    meet the case or controversy requirement under Article III and, therefore, must be dismissed.

8    Accordingly, Defendants' motion for summary judgment should be denied on this basis and

9    Plaintiff's claims for injunctive relief should be permitted to proceed.[13]

10   **3)  Motion to Strike**

11         In his opposition to Defendants' motion, Plaintiff moves to strike the declarations of

12   current and former ICCF Jail Chiefs Jose Briones and William F. Dennis.  Dkt. 111.  Defendants

13   oppose Plaintiff's motion.  Dkt. 116.  With respect to former Chief Dennis' declaration, Plaintiff

14   argues that "it does not say it is based on personal knowledge, nor does it say that he is

15   competent to testify or 18 years old."  Dkt. 111 at 19.  He also contends that former Chief

16   Dennis' declaration "does not have the exhibits it [sic] referring to attached to it."  *Id.*

17         Federal Rule of Civil Procedure 56 provides that affidavits filed supporting or opposing

18   summary judgment must be "made on personal knowledge, set out facts that would be

19   admissible in evidence, and show that the affiant is competent to testify on the matters stated."

20   Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence

21   is introduced sufficient to support a finding that the witness has personal knowledge of the

22

23

---

[13] The Court also notes that it is concerned regarding the nature of the practice allegedly in place at the ICCF with respect to the mailing of internet-generated materials and the effect on all inmates at the facility who may be subject to that practice.

matter." "[P]ersonal knowledge and competence to testify [may be] reasonably inferred from [the declarants'] positions and the nature of their participation in the matters to which they swore[.]" *See Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir. 1990). "[T]he requirement of personal knowledge imposes only a 'minimal' burden on a witness; if 'reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible.'" *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (quoting *McCormick on Evidence* § 10 (Kenneth S. Broun, 7th ed. 2013)).

Here, former Chief Dennis' declaration states "[a]ttached are the facts, as I can recall, of the events leading up to the Island County Detention Facility mail denial issued to inmate Joshua Lambert." Dkt. 109 at 2 (emphasis added). Former Chief Dennis then proceeds to describe the circumstances under which Plaintiff was denied delivery of mail during the period of time he was Jail Chief, he identifies and explains handwriting notations he made on a number of exhibits, and also states that he personally "reviewed th[e] Mail Denial form" and "forwarded the materials under the authority of the … Order that any future items would be issued to the defendant as 'legal material.'" Dkt. 109 at 2. These statements by former Chief Dennis, which are sworn under penalty of perjury, are sufficient under the standard set forth in Fed. R. Civ. P. 56(e) to demonstrate that they are based upon personal knowledge and that he is competent to testify on the matters set forth in his declaration. Plaintiff also offers no facts or evidence that would call into question former Chief Dennis' age or competency. Furthermore, although former Chief Dennis does not attach the exhibits he references to his declaration separately, he does refer to page number identifiers located in the existing record which his comments are based upon. Dkt. 109 at 2 (citing ICCF p0170, ICCF p0169, and ICCF p1068); Dkt. 105 at 52-53 (mail rejection documents with identifiers ICCF p0170, ICCF p0169, and ICCF p1068,

1   submitted into the record by Plaintiff).  Accordingly, the Court sees no basis to strike former

2   Chief Dennis' declaration and Plaintiff's request to strike should be denied.

3            With respect to Chief Briones' declaration, Plaintiff moves to strike the declaration as "it

4   pertains to the ICCF policy in question and to any claimed penological interests based on it[.]"

5   Dkt. 111 at 19.  Plaintiff goes on to argue that the policy attached to Chief Briones' declaration is

6   inauthentic and irrelevant due to the fact that it contains a date on the bottom reflecting it was

7   revised in 2019, and on the grounds that the wording is slightly different from the wording

8   Plaintiff asserts was the policy in effect during the relevant period in 2018.  *Id.* (citing a

9   document purportedly filed at Dkt. 91, Ex. B.).[14]

10           Chief Briones' declaration is signed under penalty of perjury and provides a sufficient

11  basis for establishing personal knowledge and competency and for authenticating the attached

12  exhibit.  Dkt. 108 at 1.  However, even assuming the version of the Inmate Handbook Plaintiff

13  cites to, which is dated in 2013, was the policy in effect during the relevant period in 2018,

14  Plaintiff fails to establish that the slight difference in the language between the policies makes

15  any difference to the Court's analysis or significantly undermines, or renders inadmissible, any

16  of the substantive statements made in Chief Briones' declaration.  The 2013 version of the

17  Inmate Handbook Plaintiff refers to reads: "Books, magazines, and newspapers will be accepted

18  if it comes directly from the Publisher, Book Club, or retailer through the mail. . . . Computer

19  generated (down loaded material) books, magazines, photos and newspapers will not be

20  accepted."  Dkt. 94-1, Ex. B.  The version dated 2019 attached to Chief Briones' declaration

21  reads: "Books, magazines, and newspapers will be accepted if it comes directly from the

22

23  ---

[14] Plaintiff cites to a policy document purportedly filed at Dkt. 91, Ex. B, as the policy he believes to have been in effect during the relevant period.  Dkt. 111.  However, this appears to have been a citation or typographical error as the policy Plaintiff refers to appears to have instead been filed at Dkt. 94-1, Ex. B. Accordingly, the Court refers to that document in considering Plaintiff's argument.

Publisher, Book Club, or retailer through the mail . . . Computer generated (downloaded) books,

magazines, and newspapers will not be accepted." Dkt. 108, Ex. A. Plaintiff offers no

persuasive argument or explanation for how this slight difference in wording, (the 2013 version

including the word "photos" and "material") alters the Court's analysis or is otherwise relevant

in this case.[15] Accordingly, the Court sees no basis to strike Chief Briones' declaration and

Plaintiff's request to strike should be denied.

CONCLUSION

The undersigned recommends that Defendants' motion summary judgment, Dkt. 106, be

DENIED, or, alternatively, GRANTED in part and DENIED in part, as set forth below.

Specifically, the undersigned recommends:

(1) The Court should find that Plaintiff's complaint fails to properly raise or state a claim

challenging the Inmate Handbook policy as written, or on the basis that the expressly

adopted official policy violated Plaintiff's constitutional rights for purposes of municipal

liability, and the Court should dismiss those claims, or decline to consider them, on that

basis. Alternatively, if the District Judge disagrees and finds the complaint raises a

challenge to the policy as written as constituting a blanket ban on internet-generated

materials, or a challenge on the basis that the expressly adopted official policy violated

Plaintiff's constitutional rights for purposes of municipal liability because it constituted a

blanket ban on internet materials, Defendants' motion for summary judgment should be

GRANTED and those claims should be dismissed with prejudice.

(2) Defendants' motion for summary judgment should be DENIED with respect to Plaintiff's

claims against Island County and Chief Briones in his official capacity alleging that ICCF

---

[15] Neither party argues that any *other* version of the policy was in place during the relevant period in 2018.

officials have adopted a practice or custom of (or interpreted and applied the policy in the Inmate Handbook as) prohibiting *all* internet-generated materials in violation of Plaintiff's constitutional rights under the First Amendment and *Clement v. California Department of Corrections*, 364 F.3d 1148 (9th Cir. 2004).

(3) The Court should find that Plaintiff's complaint does not raise a separate claim in Count 1 against Chief Briones in his individual capacity. Alternatively, if the District Judge disagrees and finds Plaintiff has sufficiently alleged a claim against Chief Briones in his individual capacity: (1) to the extent Plaintiff's complaint can be construed to raise a challenge to the policy as written as constituting a blanket ban on internet-generated materials, the Court should grant Defendants' motion for summary judgment on qualified immunity grounds; and (2) to the extent Plaintiff raises a challenge to the implementation or application of the policy in the Inmate Handbook as a blanket ban on internet-generated materials, the Court should deny Defendants' motion for summary judgment on qualified immunity grounds.

(4) Defendants' motion for summary judgment should be DENIED with respect to Plaintiff's claims for injunctive relief and those claims should be permitted to proceed.

(5) Plaintiff's requests to strike the declarations of Jose Briones and Willam F. Dennis, Dkt. 111, should be DENIED.

A proposed order accompanies this Report and Recommendation. Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the

third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on <u>**January 13, 2023**</u>.

Dated this 21st day of December, 2022.

S. KATE VAUGHAN
United States Magistrate Judge