The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSHUA D. LAMBERT,<br><br>    Plaintiff,<br>v.<br><br>ROBERT McKAY, *et al.*,<br><br>    Defendants. | Civil Action No. 2:19-cv-1829-BJR<br><br>**ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT, AND DISMISSING CASE WITH PREJUDICE** |

## I.    INTRODUCTION

Before the Court is Magistrate Judge S. Kate Vaughan's Report and Recommendation concerning Defendants' motion for summary judgment. Dkt. Nos. 106, 117. The Report and Recommendation endorses denying Defendants' motion or, in the alternative, granting in part and denying in part the motion. Having reviewed the Report and Recommendation, Defendants' Objections (Dkt. No. 118), Plaintiff's Objections (Dkt. No. 119), Plaintiff's Response to Defendants' Objections (Dkt. No. 120), the record of the case, and the relevant legal authority, the Court will adopt in part and reject in part the Report and Recommendation, grant Defendants' motion, and dismiss this case with prejudice. The reasoning for the Court's decision follows.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Joshua Lambert is currently confined at the Washington State Penitentiary in Walla Walla, Washington. He was convicted in 2013 in Island County Superior Court on multiple

charges, including for the murders of his maternal and paternal grandfathers. *See State v. Lambert*, 199 Wn. App. 51 (2017); *State v. Lambert*, Island County Superior Court cause number 11-1- 00181-5. In 2018, in connection with an appeal and resentencing, Lambert was temporarily transferred to the Island County Correctional Facility ("ICCF"), where he remained for approximately two months before returning to the Washington State Penitentiary.

In 2020, Lambert filed this *pro se* 42 U.S.C. § 1983 civil rights action alleging numerous federal and state-law claims arising out of the time he spent in ICCF against multiple defendants, including Island County, several employees of ICCF and the Island County Sheriff's Office, and Lambert's former standby public defender. Dkt. No. 6. However, after extensive motion practice, only one claim remains: Count 1, in which Lambert seeks damages and injunctive relief for a claimed violation of the First Amendment.

Count 1 asserts that Lambert's "right to speech was violated because of a jail policy that forbade any and all speech items <u>printed off the internet</u>, and irregardless [*sic*] of whether or not there was a legitimate penological interest." Dkt. No. 6 at ¶ 1.1 (emphasis in original). The Complaint refers to the ICCF Inmate Handbook, Appendix B, "6.1.0 Incoming Mail," which provides, in part, "Books, magazines, and newspapers will be accepted if it [*sic*] comes directly from the Publisher, Book Club, or retailer through the mail, . . . Computer generated (downloaded material) books, magazines, and newspapers will not be accepted." *Id*., ¶ 1.6. Lambert alleges that Defendants rely on this policy to prohibit all internet-generated material in violation of his free speech rights. Dkt. No. 6, ¶ 1.4.

Previously, the parties filed cross motions for judgment on the pleadings on Count I, which this Court denied noting that "[i]t is not possible to rule on the constitutionality of [the ICCF] policy or practice – in favor of either party – where the contours of that policy or practice

(and not just the as-written 'official policy') are in dispute and have not been clearly articulated." Dkt. No. 67 at 7. Thus, the parties commenced discovery and Defendants now move for summary judgment, arguing that Lambert lacks any evidence demonstrating that his First Amendment rights were violated by any ICCF policy or custom.

### III.   DISCUSSION

#### A.   Standard of Review

Summary judgment should be granted when "the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating an absence of any genuine issue of material fact. *Playboy Enter., Inc. v. Netscape Commc'n Corp.*, 354 F.3d 1020, 1023-24 (9th Cir. 2004). Where the moving party does not bear the burden of proof, however, it may meet its burden by showing an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it has done so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Non-moving parties must "produce at least some significant probative evidence tending to support" their allegations. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (quoting *T.W. Elec. Serv., Inc. v. Pacific Elect, Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)). Where they fail to do so, summary judgment is appropriate.

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1).

### B.  The Magistrate Judge's Findings and Recommendations

The Report and Recommendation finds Lambert has failed to establish that the challenged ICCF policy, either as written or as an expressly adopted official policy, violated his constitutionally protected rights, and as such, recommends that this Court dismiss this claim. However, the Report and Recommendation also finds that a genuine issue of material fact exists as to whether Defendants have adopted a practice or custom of prohibiting *all* internet-generated materials in violation of Lambert's First Amendment rights and *Clement v. California Department of Correction*, 364 F.3d 1148 (9th Cir. 2004), and as such, recommends that this Court deny Defendants' motion with respect to this claim. The Report and Recommendation further finds that Defendants' motion with respect to Lambert's claim for injunctive relief should be denied.

Lambert and Defendants each filed objections to the Report and Recommendation. Lambert objects to the Magistrate Judge's conclusion that he failed to establish that the ICCF policy, as written, violates his First Amendment rights. Defendants object to the Magistrate Judge's conclusion that a genuine issue of material fact exists as to whether Defendants maintain a custom or practice of prohibiting all internet-generated materials in violation of Lambert's constitutional rights. Defendants also object to the Magistrate Judge's recommendation that

Lambert should be allowed to maintain his claim for injunctive relief. The Court will address each of these objections in turn.

1. **Plaintiff's Objection to the Magistrate Judge's Determination that the ICCF Policy Is Constitutional as Written**

As stated above, Lambert alleges that ICCF has a written policy that prohibits inmates from receiving through the inmate mail system "any and all speech items <u>printed off the internet</u>, and irregardless [*sic*] of whether or not there was a legitimate penological interest." Dkt. No. 6 at ¶ 1.1 (underline in original) (*see also* ¶ 1.6 referencing Inmate Manual, Incoming Mail Section). He asserts that this blanket prohibition on internet-generated materials in inmate mail violates his First Amendment rights under *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148 (9th Cir. 2004).

The "Incoming Mail" section of the ICCF Inmate Handbook states in relevant part: "Books, magazines, and newspapers will be accepted if it [*sic*] comes directly from the Publisher, Book Club or retailer through the mail,...Computer generated (downloaded) books, magazines, and newspapers will not be accepted." Dkt. No. 108, Ex. A at 8. Citing to the foregoing, the Magistrate Judge concluded that "the policy at issue in this case is distinguishable from the policy at issue in *Clement*" and, thus, does not violate Lambert's First Amendment rights as written. Dkt. No. 117 at 11. This Court agrees with the Magistrate Judge. In *Clement*, the Ninth Circuit held that a California Department of Correction ("CDC") policy that prohibited inmates from receiving *any* internet-generated material in the mail was unconstitutional. *Clement*, 364 F.3d at 1153. The Ninth Circuit held that the CDC's blanket prohibition of internet-based materials had no rational connection with the penological interests which the policy aimed to protect. *Id*. at 1152 ("Prohibiting all internet-generated mail is an arbitrary way to achieve a reduction in mail volume."). Unlike the *Clement* policy, here the ICCF policy only prohibits *some* internet-generated materials, namely "[c]omputer generated (downloaded) books, magazines, and

newspapers." Dkt. No. 108, Ex. A at 8. Thus, the ICCF policy is not analogous to the policy at issue in *Clement*.

Lambert's objection to the Magistrate Judge's conclusion that the ICCF policy is distinct from the *Clement* policy is two-fold. First, he argues that the version of the ICCF policy Defendants submitted in support of the summary judgment motion is not accurate. He claims that the version of the policy that was in effect when he was housed at ICCF also prohibited internet-generated photographs from being included in inmate mail. Even assuming that this is true, the ICCF policy would still be readily distinguishable from the *Clement* policy. Once again, the *Clement* policy constituted a complete ban on all internet-generated material, while the ICCF policy only prohibits books, magazines, newspapers, and possibly photographs. It does not ban other material that is readily available on the internet (*e.g.*, blog posts, song lyrics, data compilations, recipes).

Lambert also argues that Defendants have failed to establish a penological interest for ICCF's restriction on some internet-generated materials. This Court disagrees. To the contrary, Defendant Briones, who administers the jail for the Island County Sheriff's Office, submitted a declaration in which he affirms that "[r]egulations such as those contained in the Inmate Handbook restricting inmates from receiving internet-generated materials through the mail except directly from publishers are vital to aid in jail staff's efforts to prevent the introduction of contraband into the facility. This is particularly true in jurisdictions such as Island County, where limited jail resources do not enable the facility to staff armies of mail screeners." Dkt. No. 108 at ¶ 4. Such limited prohibitions—known as "publisher only" rules—have consistently withstood First Amendment challenges. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 550 (1979) (upholding publisher-only rule as applied to hardback books); *Jones v. Salt Lake Cnty.*, 503 F.3d 1147, 1158

6

(10th Cir. 2007) (collecting cases extending *Bell* to paperback materials, including magazines, newspapers, paperback books, and periodicals).

      **2.    Defendants' Objection to the Magistrate Judge's Determination that a Genuine Issue of Material Fact Exists as to the Existence of an Unconstitutional ICCF Custom or Practice**

Under *Monell v. Department of Social Services of City of New York*, municipalities "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." 436 U.S. 658, 690-91 (1978). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403-404 (1997). Once the plaintiff has demonstrated that a custom existed, the plaintiff need not necessarily demonstrate that "official policy-makers had actual knowledge of the practice at issue." *Navarro v. Block*, 72 F.3d 712, 714–15 (9th Cir. 1995). However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also Block*, 72 F.3d at 714 ("Proof of random acts or isolated events is insufficient to establish custom.").

Here, while the Magistrate Judge concluded that the ICCF policy is not unconstitutional as written because, on its face, the policy only prohibits certain internet-generated material, she concluded that Lambert has presented sufficient evidence to create a genuine issue as to whether Defendants have a custom or practice of prohibiting all such material. The Magistrate Judge cites to the following in the record as creating a genuine issue of material fact that prohibits summary

judgment on this issue: (1) Lambert's "retriev[al]" of a 31-page internet-generated document from his property box at ICCF (Dkt. No. 117 at 16, 19), (2) Chief Briones' response to a 2018 grievance filed by Lambert, and (3) Lambert's declaration in which he claims several staff members at ICCF informed him all internet-generated material is banned from inmate mail. Dkt. No. 117 at 15-19.

Defendants object to the Magistrate Judge's conclusion, arguing that the foregoing is insufficient to establish that Defendants had an unofficial practice or custom of sufficient "duration, frequency, and consistency" to attach liability under *Monell* and § 1983. *Trevino*, 99 F.3d at 918. This Court agrees with Defendants. As an initial matter, the 31-page internet-generated document that Lambert "retrieved" from his property box is comprised of newspaper articles about his criminal trial that were originally withheld because they did not come directly from a publisher per the ICCF policy. *See* Dkt. No. 108, Ex. A at 8 (stating that "[c]omputer generated (downloaded) books, magazines, and *newspapers* will not be accepted") (emphasis added); Dkt. No. 107, Ex. A at 7-9, Transcript from Lambert's 2011-2013 Trial Proceedings in Island County Superior Court (Lambert referring to newspaper articles about his case that were confiscated by the jail because they were printed from the internet and "sent in the mail and not from a lawyer" and the Sheriff stating that the articles were confiscated from the mail and placed in Lambert's property box because they did not "come from a publisher"). Confiscating documents that clearly fall within the defined parameters of the ICCF policy is not evidence of a custom or practice that extends beyond that policy Dkt. No. 108, Ex. A at 8.

Nor is this Court persuaded that Chief Briones' response to Lambert's 2018 appeal of his grievance regarding the ICCF policy is evidence of a custom or practice by the jail of prohibiting all internet-generated materials. In his appeal through the jail's administrative process, Lambert

states that he would like the ICCF policy changed to allow non-legal internet articles and printouts. Dkt. No. 108, Ex. B at 13. Chief Briones' denies Lambert's appeal, noting that "[a]s per current practice in the Island County Jail you are permitted to have family and friends mail in books or approved literature from an outside vender that are mental health related." The Magistrate Judge correctly points out that Chief Briones' response "does not directly address Plaintiff's request to allow internet articles and print outs that are of other subject matter than legal subjects, nor does he address Plaintiff's access to, or Defendants' policy or practice with respect to, internet-generated materials other than books, newspapers, magazines or photos." Dkt. No. 117 at 17. However, his failure to address Lambert's request is not evidence that the jail has an established custom or practice of prohibiting all internet-generated material.

Thus, the only evidence of such a custom or practice is Lambert's own self-serving declaration in which he unliterally ascribes statements to various ICCF staff members. However, courts routinely "refused to find a genuine issue [of material fact] where the only evidence presented is uncorroborated and self-serving statements." *Coleman v. UPS Supply Chain Logistics*, 2012 WL 6098276, *2 (W.D. Wash. Dec. 62012) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) and *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). This is true even in matters involving *pro se* litigants who admittedly may struggle procuring evidence without the assistance of legal counsel. *See*, *e.g.*, *Wright v. Grannis*, 2014 WL 4804762, *8 (S.D. Cal. Sept. 26, 2014) ("Ultimately, [*pro se*] Plaintiff's self-serving statements, uncorroborated by other evidence, are insufficient to create a genuine issue of material fact."); *Hammonds v. Collins*, 2016 WL 1621986, *3 (M.D. PA April 20, 2016) (declining to "accept unsupported, self-serving" testimony from *pro se* plaintiff "as evidence sufficient to create a jury question").

As stated above, this Court previously denied the parties' cross motions for judgment on the pleadings on this issue because it was "unclear from the record what Defendants' actual *practice* is" regarding internet-generated materials in inmate mail. Dkt. No. 67 at 7 (emphasis in original). Now the time for discovery has passed and it is Lambert's burden to present evidence to corroborate his claim that it is "jail policy [to] for[bid] *any and all* speech items printed off the internet, and irregardless [*sic*] of whether or not there was a legitimate penological interest." Dkt. No. 6 ¶ 1.1 (italics added, underline in original removed). Lambert offers no declaration or testimony from ICCF staff members establishing the veracity of the statements he unilaterally ascribes to them, nor does he offer any corroborating evidence that any of the statements he attributes to them were ever made. Nor does he present testimony from any other inmates to whom such statements were allegedly made or against whom the purportedly unconstitutional "practice or custom" was applied. Simply put, Lambert has failed to carry his burden and summary judgment on this claim must be awarded to Defendants.[1]

### 3.     Other Claims and Motions

Lambert also seeks injunctive relief based on the ICCF policy; this claim must also be dismissed because he has failed to establish that the ICCF policy, as written or as applied, is unconstitutional. The Magistrate Judge also recommends that Lambert's motions to strike the declarations of Defendant Briones and William F. Dennis be denied. Lambert does not object to this recommendation and the Court adopts it.

---

[1] The complaint asserts a claim against Defendant Chief Briones in his official capacity only, stating that Briones is liable because he is "the policymaker" at ICCF. Dkt. No. 6 at 8; *see also* Dkt. No. 57 at 6. "A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Therefore, to the extent that Count I also states a claim against Chief Briones, summary judgment is granted on that claim as well.

## IV. CONCLUSION

For the foregoing reasons, the Court HEREBY ADOPTS in part and DECLINES TO ADOPT in part the Report and Recommendation (Dkt. No. 117); GRANTS Defendants' motion for summary judgment (Dkt. No. 106), and DISMISSES this case with prejudice.

Dated this 27th day of January 2023.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge